**VILLAGE OF GATES MILLS, Appellant and Cross–Appellee,**

v.

**JONES et al., Appellees and Cross–Appellants.**

[Cite as *Gates Mills v. Jones* (1994), 95 Ohio App.3d 341.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65753.

Decided July 18, 1994.

342

*Charles T. Riehl*, Director of Law; *Walter, Haverfield, Buescher & Chockley* and *R. Todd Hunt*, for appellant and cross-appellee.

*Baker & Hostetler, Jose C. Feliciano, Loretta H. Garrison* and *Raymond Rundelli*, for appellee and cross-appellant.

WEAVER, Judge.

Appellant and cross-appellee, the village of Gates Mills appeals from the order of the trial court awarding attorney fees and interest in favor of appellee and cross-appellant David R. Jones et al. ("Jones"). Jones's appeal challenges the amount of the award ordered by the trial court. For the reasons set forth below, we affirm in part and reverse in part.

I

Gates Mills commenced appropriation proceedings against Jones on August 24, 1989, pursuant to its authority under R.C. Chapter 163. The trial court awarded the Jones property to Gates Mills, and a jury determined Jones's compensation to be $280,000. On February 11, 1993, Gates Mills timely abandoned the appropriation pursuant to R.C. 163.21.

On March 11, 1993, Jones moved, pursuant to R.C. 163.21, for a judgment against Gates Mills for costs, jury fees, pre- and postjudgment interest, liability insurance, property taxes and various other expenses.

On June 1, 1993, the trial court conducted a hearing to determine Jones's damages. At the commencement of this hearing, and pursuant to Gates Mills'

motion *in limine,* the trial court ruled that evidence of Jones's property taxes and liability insurance premiums paid on the premises would not be admitted. Thereafter Jones presented evidence that his attorney fees and expenses were $111,303.43 through April 16, 1993, and an additional $15,355.15 from April 16 to May 28, 1993. The evidence further demonstrated that Jones's lead counsel, Jose Feliciano, spent 307.75 hours on the case at rates varying from $170 to $225 per hour and that Feliciano's associate counsel Loretta Garrison spent 483.25 hours on the case at rates varying from $85 to $115 per hour. In addition, Jones presented evidence that several other attorneys worked on the case, primarily under Feliciano and Garrison. Jones's expert witness testified that after reviewing the entire matter he felt that the attorney fees were reasonable.

Gates Mills established that the hourly rate it paid its attorneys was at times $50 to $110 per hour less than what Jones paid. Gates Mills further presented evidence, and Jones's expert witness agreed, that its counsel is the preeminent firm in the area for appropriation cases. In addition, Gates Mills demonstrated that it is customary for a private landowner to pay a contingency fee rather than fixed fee in an appropriation case.

The parties stipulated to $14,195.72 of Jones's counsel's expenses, leaving several items in dispute.

On June 2, 1993, the trial court made the following ruling:

"The Court finds that the defendants [Jones] are entitled to expenses in the amount of $16,601.53.

"The Court further finds after taking into consideration all the factors set forth in DR 2–106 of the Code of Professional Responsibility that the Defendants are entitled to attorney fees in the amount of $93,393.75. This finding is based upon an allowance of 307.75 hours of services performed by Attorney Jose C. Feliciano at the rate of $170.00 per hour and 483.25 hours of work performed by Attorney Loretta H. Garrison at the rate of $85.00 per hour.

"The Court further finds that the defendants are entitled to interest from the date of judgment of January 3, 1991 through May 7, 1993 at the statutory rate of 10%."

This appeal and cross-appeal timely follow that judgment.

## II

For its sole assignment of error Gates Mills contends that:

"The trial court erred in awarding postjudgment interest on an appropriation judgment which was subsequently abandoned by the Village since the statute specifically governing abandonment of appropriation actions, R.C. 163.21, does

not provide for judgment interest when a judgment is abandoned and R.C. 163.21 is an exception to the general statutory interest provision in R.C. 1343.03(A)."

R.C. 163.21(A)(2) provides for the award of expenses when a municipality abandons an appropriation action, as follows:

"(2) In all cases of abandonment as described in division (A)(1) of this section, the court shall enter a judgment against the agency for costs, including jury fees, and shall enter a judgment in favor of each affected owner, in amounts that the court considers to be just, for each of the following that the owner incurred:

"(a) Witness fees, including expert witness fees;

"(b) Attorney's fees;

"(c) Other actual expenses."

In *Columbus v. Rugg* (Franklin C.P.1953), 69 Ohio Law Abs. 573, 575, 126 N.E.2d 613, 615, the court had the opportunity to analyze the former statute analogous to R.C. 163.21, G.C. 3697, and determined that interest on an appropriation award subsequently abandoned was "by no stretch of the imagination" a "proper expense." This decision was affirmed by the Tenth District Court of Appeals at (1954), 97 Ohio App. 26, 27, 123 N.E.2d 299, 300.

Furthermore, in construing provisions of R.C. 163.17 that provide for interest on an appropriation that has not been abandoned, courts have ruled that interest is not to be awarded while the landowner retains possession of the property. *Norwood v. Cannava* (1989), 45 Ohio St.3d 238, 543 N.E.2d 802; *Athens v. Warthman* (1970), 25 Ohio App.2d 91, 54 O.O.2d 123, 266 N.E.2d 583. In the case *sub judice*, Gates Mills never took possession of the property. In addition, R.C. Chapter 163, which became effective after R.C. Chapter 1343, does not incorporate R.C. Chapter 1343 for purposes of awarding interest. We find no basis for an award of postjudgment interest under R.C. Chapter 163.

Under R.C. 1343.03(A) a court is granted general authority to award postjudgment interest under the following circumstances:

"*[W]hen money becomes due and payable* upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and *upon all judgments*, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or *other transaction* * * *." (Emphasis added.)

■ Jones contends that the statutory appropriation proceedings are an "other transaction" under R.C. 1343.03(A), and asks this court to follow the Supreme Court of Washington in *Seattle v. Seattle First Natl. Bank* (1972), 81 Wash.2d 652, 504 P.2d 292, and affirm the award of postjudgment interest. In *Seattle*, a condemnation award was ruled to accrue interest from the date of the verdict.

Under the Ohio law as set forth in *Norwood* and *Athens, supra,* an appropriation award does not accrue interest until the date *possession* of the property is taken by the municipality. Therefore, the *Seattle case* is not based on a statutory framework similar to the Ohio Revised Code and is not persuasive as to Jones's position.

Furthermore, R.C. 163.21 provides a ninety-day period *after determination of the cause* in which a municipality can abandon the proceedings. We view this ninety-day right to abandon as meaning that the appropriation award is not due and payable under R.C. 1343.03 until either possession is transferred or ninety days pass from the date of the determination. On this basis we find that the trial court lacked authority under R.C. Chapter 1343 to award Jones postjudgment interest, as the award never became due and payable, since the city abandoned the proceedings in a timely manner.

We find that the trial court erred in awarding Jones postjudgment interest on the appropriation award. The Gates Mills assignment of error is sustained.

### III

Jones's first three assignments of error share a common basis in law and fact and will, therefore, be addressed simultaneously.

Jones first contends:

"The trial court erred in failing to award the owners the litigation costs and attorneys' fees incurred by them in connection with the hearing on the amount of costs, fees and expenses to be awarded to the owners as a result of the village's abandonment of the appropriation proceedings."

Second, Jones contends:

"The trial court erred in calculating the award of attorneys' fees to the owners by using the hourly rates prevailing at the time the appropriation proceedings commenced in 1989 because the bulk of the work was performed in subsequent years at higher and reasonable rates."

Third, Jones contends:

"The trial court erred in failing to award the owners attorneys' fees for legal services rendered in connection with the village's taking of the property and subsequent abandonment of the appropriation proceedings by persons other than the two attorneys whose services were included in the award."

The allocation of payment of attorney fees is left to the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of that discretion. *In re Estate of Ziechmann* (1989), 63 Ohio App.3d 717, 580

N.E.2d 31; *Nielson v. Bob Schmidt Homes, Inc.* (1990), 69 Ohio App.3d 395, 590 N.E.2d 1291. Concerning this abuse of discretion standard, the Ohio Supreme Court stated in *AAAA Enterprises, Inc. v. River Place* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 600–601, that:

" 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

"A decision is unreasonable if there is no sound reasoning process that would support that decision."

 In its discretion, a court may disagree with an attorney as to the amount of time required to perform a particular service. *Nielson,* 69 Ohio App.3d at 399, 590 N.E.2d at 1293; *Drake v. Menczer* (1980), 67 Ohio App.2d 122, 21 O.O.3d 429, 425 N.E.2d 961. Finally, there is no abuse of discretion demonstrated simply because a court awards a lesser amount than the claiming party's computation. *Id.*

 In determining the amount and reasonableness of the award of attorney fees a trial court is guided by the following factors set forth in DR 2–106(B) of the Code of Professional Responsibility:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

Jones's first assignment of error alleges that the trial court excluded fees for preparation for the June 1, 1993 hearing, and demands a remand to determine his fees for this appeal. Jones's second assignment of error challenges the hourly rate used in the court's calculations. Jones's third assignment of error charges that the court excluded fees attributed to thirteen other attorneys who worked on the case for Feliciano and Garrison.

The record below does not reveal that the trial court specifically *excluded* fees in preparation for the June 1, 1993 hearing. This is merely Jones's speculation. Jones did not request findings of fact and is therefore left with only the court's written judgment to challenge. This judgment merely declares the hours allowed for Feliciano and Garrison, and rates for each.

Further, the record reveals that counsel for Gates Mills was the preeminent area counsel in appropriation matters, expended less than half the hours that Feliciano and Garrison did on this case, and had a top billing rate of $125 per hour, $100 per hour less than Feliciano's highest rate.

■ While it is true that Feliciano and Garrison obtained a favorable result for Jones, this alone does not determine the reasonability of their fee. See DR 2–106.

In addition, the record reveals that the thirteen additional attorneys that worked under Feliciano primarily provided mere deposition summaries or abstracts. For the most part, their work could have been viewed by the trial court as excessive or cumulative.

■ The record below and the trial court's judgment reveal that the trial court followed DR 2–106 and made a compromise verdict allowing Jones only those fees that appeared reasonable, and disallowing the remainder. On the basis of the foregoing evidence, we cannot find that the trial court abused its discretion in awarding Jones's $93,393.75 in attorney fees.

Jones's first three assignments of error are overruled.

IV

For his final assignment of error Jones contends that:

"The trial court erred in excluding testimony relating to actual expenses in the form of real estate taxes and liability insurance incurred by the owners during the time that the village was the de facto owner of the property."

Jones asserts that Gates Mills was the *de facto* owner of the premises from the date the trial court made its compensation award, June 3, 1991, until the appropriation proceedings were abandoned on February 11, 1993. On this basis, Jones feels that Gates Mills should reimburse him for property taxes and liability insurance paid during that period.

■ R.C. 163.21(A) provides for payment of actual expenses that were incurred by the landowner in connection with the appropriation proceedings. While the taxes and insurance paid may be considered in determining the

appropriation award, R.C. 163.14, there is no basis to consider these items when the proceedings have been abandoned pursuant to R.C. 163.21.

■ Clearly, Gates Mills was not in possession of the premises for purposes of incurring liability for taxes and insurance. Gates Mills had no authority to challenge assessments or premiums as the property owner, and never held title to the land. Gates Mills had no authority under R.C. Chapter 163 to enter the premises, make it safer, or fence it in.

On the basis of the foregoing, we find that the trial court did not err in excluding evidence relating to real estate taxes and liability insurance paid by Jones from June 3, 1991 to February 11, 1993.

Jones's final assignment of error is overruled.

*Judgment affirmed in part and reversed in part.*

KRUPANSKY, P.J., and DYKE, J., concur.