DECISION.
Defendant-appellant Jessie Pickett appeals from his convictions, in a jury trial, for murder, in violation of R.C. 2903.02(B), and felonious assault, in violation of R.C. 2903.11(A)(1). He raises seven assignments of error challenging various evidentiary rulings of the trial court, the propriety of employing the felonious assault as the predicate offense for the murder, and the weight and sufficiency of the evidence adduced at trial to support his convictions. Upon our determination that the trial court properly excluded evidence otherwise relevant to Pickett's claim of self-defense, that the felony-murder conviction was appropriate, and that the convictions were well supported by the evidence, we affirm the judgment of the trial court.
 Facts
On July 8, 1999, Pickett, who had recently returned to Cincinnati from Columbus, Ohio, drove around Cincinnati in a friend's rented car. He stopped at a convenience store to purchase beer and cigarettes. Sharon Peterson approached Pickett and asked if she could join him. Although Pickett did not know her, he allowed her to accompany him. He drove the red Chevrolet Cavalier to a location where she purchased crack cocaine. They smoked the cocaine together and continued to drive around the Walnut Hills and Mt. Auburn neighborhoods of Cincinnati. Peterson made a second crack-cocaine purchase, and the two eventually parked in Inwood Park around 4 p.m.
After smoking the remaining cocaine, Peterson began to act oddly. Pickett left the vehicle to sit on a nearby rock wall and drink beer. He stated that "she got real mean for no reason." Peterson threw the contents of the glove compartment and toiletry items kept in the rental car into the street. She left the vehicle and screamed, "I am a certified nut." Pickett claimed that he asked several unidentified passersby to call the police.
Pickett returned to the car to look for the keys. When he could not find them, in his own words, he "snapped." He dragged the five-foot eight-inch Peterson from the car and began to fight. Pickett claimed that Peterson tried to douse him in rubbing alcohol and set him on fire, and that she also tried to stab him with a "ramrod," a piece of coat hangar used to clean crack pipes. He insisted that he tried to avoid the fight and feared for his safety. Nonetheless he admitted wrestling with her, throwing her to the ground and pinning her down.
Paramedics responding to bystanders' emergency calls found Peterson's lifeless body. Pickett was hugging a nearby tree, crying and yelling, "You bitch. Why did you do that? You took my life away." During the fight, Peterson had been struck at least three times in the head by an object that caused great injury. The blows were so severe that the skin on the left side of her head was torn from the underlying bone. Peterson died from the blows.
Pickett picked up the paramedics' cardiac-monitoring unit, raised it over Peterson's corpse and yelled that Peterson "took his life." Pickett released the monitor when ordered to do so by the paramedics.
When Cincinnati police officers arrived, Pickett was still cursing at Peterson. Police did not find a ramrod at the crime scene. They did find an empty bottle of rubbing alcohol but smelled no alcohol on Pickett. Although he claimed that Peterson had attacked him, Pickett was uninjured. Pickett made a number of inculpatory statements to the arresting and investigating officers. None were recorded.
The Hamilton County Grand Jury returned an indictment charging Pickett with murder for causing Peterson's death as a proximate result of committing felonious assault. There were additional charges for the felonious assault itself, and for a theft offense related to Pickett's use of the rental car. The state dismissed the theft count. Throughout the investigation and trial, Pickett maintained that Peterson had "snapped" after smoking crack cocaine, had become violent, and had attacked him. Pickett, who weighed 250 pounds and was six-feet four-inches tall, claimed self-defense and that he had caused her death only in resisting her attack. Pickett testified in his own defense. The trial court instructed the jury on the charged offenses, on the defense of self-defense, on the lesser-included offenses of voluntary and involuntary manslaughter, and aggravated assault and assault. The jury returned guilty verdicts for murder and felonious assault, and this appeal ensued.
 Constitutionality of the Felony-Murder Rule
In his third and fourth assignments of error, Pickett contends that the trial court erred in failing to dismiss the felony-murder charge. He claims that the state had to prove a collateral felony, independent of the lethal act, to serve as the predicate offense for felony murder. But where the underlying offense supporting the murder was the felonious assault of the victim, Pickett claims that the state could obtain a conviction without "sufficient proof" of his intent to kill, thus depriving him of his substantive due-process rights guaranteed by the state and federal constitutions. See Jackson v. Virginia (1979),443 U.S. 307, 316, 99 S.Ct. 2781, 2787.
This argument has been rejected by other Ohio appellate courts. See,e.g., State v. Hayden (July 14, 2000), Lake App. No. 99-L-037, unreported, appeal not allowed (2001), 91 Ohio St.3d 1522, 747 N.E.2d 249;State v. Pudelski (Mar. 15, 2001), Cuyahoga App. No. 77172, unreported, reconsideration denied and appeal not allowed (2001), 93 Ohio St.3d 1453,756 N.E.2d 116; and State v. Smathers (Dec. 20, 2000), Summit App. No. 19945, unreported, appeal not allowed (2001), 91 Ohio St.3d 1509,746 N.E.2d 612.
The Ohio Supreme Court recently reiterated in State v. Thompson
(2001), 92 Ohio St.3d 584, 586, 752 N.E.2d 276, 278-279, that legislation enjoys a strong presumption of constitutionality. That presumption remains unless the challenging party establishes beyond a reasonable doubt that the legislation is unconstitutional. See id. In State v.Thompkins (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926, 928-929, the court also stated that the General Assembly has the authority to define criminal conduct and to determine the appropriate punishment. Laws enacted pursuant to this authority are valid "if they bear a real and substantial relation to the object sought to be obtained, namely the health, safety, or general welfare of the public, and are not arbitrary, discriminatory, capricious or unreasonable. * * * The federal test is similar. To determine whether such statutes are constitutional under federal scrutiny, we must decide if there is a rational relationship between the statute and its purpose." See id.
The jury found Pickett guilty of causing Peterson's death as a proximate result of committing felonious assault. R.C. 2903.02(B), effective June 30, 1998, provides,
 No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
 Felonious assault is defined in R.C. 2903.11(A)(1), which states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C. 2901.01(A)(9) defines felonious assault as an offense of violence. It is punishable as a second-degree felony pursuant to R.C. 2903.11.
The General Assembly has thus narrowly defined the scope of felony murder under R.C. 2903.02(B), and related it to the legitimate purpose of punishing the taking of human life while committing a separate offense of violence. Only eleven first-and second-degree offenses may serve as predicate offenses under this statute. Voluntary and involuntary manslaughter may not. Moreover, the statute does not arbitrarily relieve the state of proving criminal intent, nor does it eliminate the role of the jury as the trier of fact. See, e.g., State v. Jenkins (1984),15 Ohio St.3d 164, 177-178, 473 N.E.2d 264, 279-280. As the Eleventh Appellate District has noted in State v. Hayden, the state must still prove the culpable-mental-state element by proving the intent of the predicate felony. Here, the jury was required to determine if the state had proved beyond a reasonable doubt that Pickett had "knowingly" caused serious physical harm to Peterson. Therefore, we agree with the Eighth, Ninth, and Eleventh Appellate Districts and hold that Pickett's conviction under the felony-murder rule of R.C. 2309.02(B), where the predicate offense was the felonious assault of the murder victim, did not deprive him of due process. The third and fourth assignments of error are overruled.
 Self-Defense Evidence
In his fifth assignment of error, Pickett contends that the trial court erred in excluding, over objection, the testimony of Sandra Kraft, a registered nurse who would have testified from her records that the victim made statements while at Talbert House that she had a plan to "act crazy with boys on the street so they would kill me." Pickett claims that this testimony would have aided the jury in concluding that Peterson was the aggressor and likely provoked a violent response from Pickett when he killed her.
The trial court excluded the proffered testimony on three grounds. First, as the statements were evidence of character, see Evid.R. 404(A)(2), they were inadmissible "unless [the evidence of character was] known to the defendant who is advancing a self-defense theory." Pickett did not know of Peterson's propensity. Second, the court concluded that the notes did not "contain a specific instance of conduct" and thus were not one of the approved methods of proving the victim's character. See Evid.R. 405(B). Third, the trial court excluded the testimony because Peterson's statements were nearly two years old and too far removed in time to be admitted.
On appeal, and for the first time in this case, the state contends that the Kraft evidence was inadmissible because it was medically privileged information. See R.C. 2317.02(B). It is questionable whether these statements fell within the ambit of the doctor-patient privilege. Moreover, the state did not object to the admission of the statements on this ground. No representative of Peterson's estate, the proper party to invoke the privilege, appeared at trial. While an advocate may employ new legal arguments on appeal to justify a ruling by the trial court, an appellate court may not decide the issue on that new ground unless the basis for the argument was adduced before the trial court and was made a part of the record. See State v. Peagler (1996), 76 Ohio St.3d 496,688 N.E.2d 489, paragraph one of the syllabus. As there was no evidentiary basis for the medical-privilege rationale in the record, and as the trial court was not given an opportunity to consider this rationale for exclusion, we do not consider it on appeal.
Nearly one month after the trial court's ruling to exclude the Kraft evidence, this court released State v. Wetherall (June 22, 2001), Hamilton App. No. C-000113, unreported. The first two of the trial court's reasons were erroneous in light of that decision. We note thatState v. Wetherall is now under review by the Ohio Supreme Court pursuant to an order certifying a conflict among the appellate districts. SeeState v. Wetherall (2001), 93 Ohio St.3d 1431, 755 N.E.2d 354. Until a resolution of the conflict, however, this court is obligated to follow its own precedent. Therefore, we apply State v. Wetherall and hold that the trial court erred by excluding testimony concerning Peterson's propensity for violence, when that character evidence was probative of whether the victim was the aggressor, an essential element of Pickett's claim of self defense.
Nonetheless, the trial court's third reason provided an independent ground for excluding the testimony. While all evidence having any tendency to make any consequential fact more or less probable is relevant and admissible unless otherwise prohibited, see Evid.R. 401 and 402, the trial court retains discretionary authority to exclude even relevant evidence if that evidence would confuse the issues at trial. See Evid.R. 403(B); see State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; see, also, State v. Echols (1998),128 Ohio App.3d 677, 710, 716 N.E.2d 728, 751. We hold that the trial court did not abuse its discretion in excluding otherwise relevant evidence when its conclusion that the temporal separation between the victim's statement and her later conduct substantially limited its probative value. The trial court exhibited in this respect a sound reasoning process that supported its decision. This court will not disturb that determination, even if we may not have resolved the issue in the same manner. See AAAA Enterprises, Inc. v. River Place CommunityUrban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597,601. The fifth assignment of error is overruled.
 Weight and Sufficiency of the Evidence
In his first, second, and seventh assignments of error, Pickett alleges that the convictions were based on insufficient evidence, that they were against the manifest weight of the evidence, and that the trial court erred by denying his motions for a judgment of acquittal. Pickett moved for a judgment of acquittal prior to the trial, after the state's case-in-chief, and at the conclusion of the trial.
Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. See Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211; see, also, State v. Thompkins. The jury was entitled to reject Pickett's claim that he acted in self-defense and to conclude instead that he had caused the death of Sharon Peterson as a proximate result of knowingly causing her serious physical harm. The state presented ample evidence that Peterson's death was caused by trauma from at least three severe blows to her head, and not from a fall to the ground as Pickett had claimed. While Pickett presented evidence that he was surprised by Peterson's abrupt change of demeanor and was fearful of her, the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine. See State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
The record also contains substantial, credible evidence from which the jury could have reasonably concluded that all elements of the charged crimes were proven beyond a reasonable doubt. See State v. Waddy (1991),63 Ohio St.3d 424, 588 N.E.2d 819. Moreover, the trial court did not err in denying the motions for acquittal, as reasonable minds could have reached different conclusions as to whether each element of the crimes charged had been proven beyond a reasonable doubt. See Crim.R. 29; see, also, State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184. The first, second, and seventh assignments of error are overruled.
 Lay Opinion Testimony
In his sixth assignment of error, Pickett claims that the trial court erred in permitting one of the arresting officers to testify at trial, over Pickett's objection, that, in her opinion, and based on her experience and training, Pickett "was under the influence of crack cocaine or some kind of a stimulant" at the time of his arrest. The assignment is overruled, as the testimony conformed to the requirements of Evid.R. 701, and the trial court did not abuse its sound discretion in permitting its admission. See State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of the syllabus.
Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Gorman, P.J., Sundermann and Winkler, JJ.