AAAA ENTERPRISES, INC., APPELLEE, *v.* RIVER PLACE COMMUNITY URBAN REDEVELOPMENT CORP.; CITY OF COLUMBUS, APPELLANT.

[Cite as AAAA Enterprises, Inc. *v.* River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St. 3d 157.]

(No. 88-2021 — Submitted December 13, 1989 — Decided April 18, 1990.)

*Ronald B. Noga,* for appellee.

*Ronald J. O'Brien,* city attorney, and *Marvin E. Rothhaar,* for appellant.

FAIN, J. The issue we are called upon to decide in this case is whether, when the evidentiary material before the trial court is viewed in a light most favorable to the landowner, there is a genuine issue of material fact. In deciding this issue, it is appropriate for us to consider the proper standard of review for the trial court to use in reviewing the Columbus City Council's determination that the project area was a "blighted area" for purposes of R.C. Chapter 1728.

For the reasons that follow, we conclude that the proper standard of review for the trial court to use in this case is whether the Columbus City Council abused its discretion when it determined that the project area was a "blighted area." When the evidence before the trial court is tested by that standard, we conclude that reasonable minds might reach different conclusions concerning whether the Columbus City Council abused its discretion in making that determination.

I

The city contends that the determination of its city council that the project area was a "blighted area" for purposes of R.C. Chapter 1728 was a legislative determination, and that, as such, it can only be overturned judicially upon a finding that the city council's decision represented "perversity of will, passion, prejudice, partiality, or moral delinquency." In support of its contention, the city cites *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 50 O.O. 465, 113 N.E. 2d 14, and *State, ex rel. Commercial Lovelace Motor Freight, Inc.,* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 22 OBR 275, 489 N.E. 2d 288.

Significantly, both of the cases cited by the city involved applications for writs of mandamus, where the relator must establish his clear entitlement to the relief requested, and neither case involved an assertion of a constitutional right. Both of these cited cases simply involved claims that an administrative agency of the state had acted in an arbitrary and capricious manner, to the detriment of the relator.

In the case before us, the landowner is asserting, as a matter of constitutional right, that the city has no right to take its property through the exercise of its power of eminent domain because for it to do so would be a taking of the landowner's property for other than a public purpose (which in effect would be a violation of both Section 19, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States). The landowner also contends that the taking of its property for the purposes of this project would violate Sections 6 and 13, Article VIII of the Ohio Constitution.

At oral argument, the city conceded that its city council's determination that the project was a "blighted area" was an essential predicate to its exercise of the power of eminent do-

main to take the landowner's property. Thus, in the circumstances of this case, the question whether the taking of the landowner's property would be for a public purpose, as required by both the Ohio and United States Constitutions, is embedded in the question of whether the project area is a "blighted area." If so, then the taking would be for a purpose that has properly been determined to be a public purpose — urban redevelopment. See Annotation (1972), 45 A.L.R. 3d 1096.

The authority of the courts to determine whether an action, even a legislative action, violates constitutional provisions has been unquestioned for many years. Indeed, the concept of judicial review of the constitutionality of legislative acts is a distinguishing feature of American jurisprudence.

If we were to accept the city's contention that its city council's determination that an area is a "blighted area" (with the necessary consequence being that its taking of property within that area through the exercise of the power of eminent domain would be for a public use, and would therefore satisfy constitutional requirements) can only be judicially overturned upon a finding that the city council's decision constituted "perversity of will, passion, prejudice, partiality, or moral delinquency" — essentially a bad-faith standard — we would be abdicating the judicial responsibility to interpret constitutional provisions and to protect rights secured by those provisions, since any determination made in good faith, no matter how erroneous, would be effectively immune from judicial review. We must not abdicate the historic role of the courts in the protection of constitutional rights through the exercise of the power of judicial review.

On the other hand, a city council's determination as to whether an area is a "blighted area" for purposes of R.C. Chapter 1728 necessarily involves the exercise of discretion. The definition of "blighted area," contained in R.C. 1728.01(E), is as follows:

" 'Blighted area' means an area within a municipality containing a majority of structures that have been extensively damaged or destroyed by a major disaster, or that, by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, unsafe and unsanitary conditions which endanger lives or properties by fire or other hazards and causes, or that, by reason of location, in an area with inadequate street layout, incompatible land uses or land use relationships, overcrowding of buildings on the land, excessive dwelling unit density, or other identified hazards to health and safety, are conducive to ill health, transmission of disease, juvenile delinquency and crime and are detrimental to the public health, safety, morals and general welfare."

The above-quoted definition necessarily involves the exercise of considerable discretion in any determination of whether a particular area is a "blighted area," and it is not inappropriate for a city council, being concerned not only with the area itself, but also with the considerations of public policy involved in the definition, to exercise that amount of discretion in the first instance. Furthermore, given the importance of urban redevelopment, there is reason to give the definition of "blighted area" a liberal interpretation. See Annotation, *supra,* at 1106-1110.

We conclude that the proper standard for a trial court to use when reviewing a city council's determination that an area is a "blighted area"

for purposes of R.C. Chapter 1728 and for the purpose of the exercise of the city's power of eminent domain is an abuse-of-discretion standard.

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87, 19 OBR 123, 126, 482 N.E. 2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

In the case before us, the task for the trial court is to determine whether there exists a sound reasoning process that the Columbus City Council might have used in reaching its determination that the project area was a "blighted area." The trial court is not required to determine that it would have reached the same conclusion itself, had it been confronted with the question of whether the project area was a "blighted area."

## II

The city contends that regardless of the standard of review properly employed by the trial court, it is entitled to summary judgment because the landowner failed to offer any evidence in opposition to the city's motion for summary judgment, and therefore failed in the landowner's burden of proof.

Summary judgment is a potentially useful, but extraordinary, procedure wherein the trial of issues of fact made up by the pleadings is avoided. Because summary judgment represents a shortcut through the normal litigation process by avoiding a trial, the burden is strictly upon the moving party to establish, through the evidentiary material permitted by the rule, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Civ. R. 56(C). While the party responding to the motion may have a formidable burden of proof to overcome at trial, he does not have that burden in responding to the motion for summary judgment, and he may rely upon evidentiary material submitted by the movant in support of his (the responding party's) argument that there is a genuine issue of material fact.

In the case before us, the landowner contends that when the evidence submitted by the city is viewed in a light most favorable to the landowner, reasonable minds can disagree as to whether the Columbus City Council abused its discretion when it determined that the project area was a "blighted area."

We agree with the landowner. When the city's own "physical condition survey," upon which the city council expressly relied, is viewed in a light most favorable to the landowner, a reasonable mind might conclude that the majority of the structures within the area were not in such poor condition as to satisfy the statutory definition, and that the city council was unreasonable in reaching a conclusion contradicted by the very survey upon which it expressly relied in coming to that conclusion.

## III

The landowner also contends that the taking of its property through the exercise of the city's power of eminent

domain would violate Sections 6 and 13, Article VIII of the Ohio Constitution, because the city's general revenues or funds derived from the sale of its general obligation bonds will be used to pay the required compensation. The landowner also argues that it has been the practice of the city and of River Place to use the threat of the exercise of the power of eminent domain in negotiations for the acquisition of particular parcels within the project area, and, upon successfully negotiating the acquisition of the parcel, to request that the parcel be deeded directly to a third party (allegedly a front for the proposed developer of the property), without the intermediate step of the acquisition of the fee simple title by the city. Although there does not seem to be any support for the latter argument in the record, the city evidently does not dispute that parcels in the area may be passing directly to the developer through negotiations with the owners of those parcels.

Although Section 13, Article VIII of the Ohio Constitution expressly contemplates that the state and its political subdivisions may acquire and then sell property when to do so would "improve the economic welfare of the people of the state" or would accomplish certain other public purposes enumerated therein, the landowner is apparently arguing that this does not authorize the use of the threat of a municipality's use of its power of eminent domain to acquire property through negotiation when the result is a direct acquisition of the property by a third party without title first passing to the municipality.

Some members of this court find the foregoing argument to be persuasive; others, this writer included, do not. If, as seems to be agreed, a municipality may properly exercise the power of eminent domain to acquire property and then sell that property to a third, private party for purposes authorized by Section 13, Article VIII, there does not appear to be any reason why all of those involved should be prevented from reaching the same result, through negotiation, without the municipality actually having to exercise its power of eminent domain. Indeed, the public policy in favor of the negotiated settlement of matters that would otherwise have to be litigated would seem to encourage such a negotiated short-cut of the normal process for appropriating land and then selling it for development purposes.

In any event, it is not necessary to decide this issue at this time. We conclude that the trial court improvidently granted summary judgment, for all the reasons set forth in Parts I and II of this opinion. Therefore, this cause is being remanded to the trial court regardless of any disposition that we might presently be inclined to make of the issue discussed in this part of the opinion. This issue cannot help but benefit from a better development of the facts upon which it depends.

### IV

For the reasons set forth herein, the judgment of the court of appeals is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS and RESNICK, JJ., concur.

WRIGHT, J., dissents.

MIKE FAIN, J., of the Second Appellate District, sitting for H. BROWN, J.

WRIGHT, J., dissenting. I agree

with the bulk of the reasoning contained in the majority opinion, but not the result. Using the abuse-of-discretion test as to the actions of Columbus City Council, there is no way a trial court could conclude that summary judgment would not be justified on the basis of the record before us. Thus, I think a remand is nothing more than a useless exercise.