DECISION.
{¶ 1} In this divorce case, defendant-appellant Michael L. Brown appeals the trial court's distribution of marital assets between him and his ex-wife, plaintiff-appellee Penny G. Brown. We affirm.
 I. The Marital Property {¶ 2} Michael and Penny Brown were married on February 19, 1983. The couple had two children, Kelly Ann, born August 15, 1983, and Randy Michael, born April 24, 1986.
 {¶ 3} In 1990, at age seven, Kelly suffered permanent brain damage as a result of an accidental strangulation when she was in a hammock. Due to Kelly's accident, the family received a settlement award of over six million dollars. A special-needs trust was created for Kelly from these funds. Income generated by the trust pays for Kelly's care, including a salary to Penny of $31,200 a year to care for Kelly.
 {¶ 4} After receiving the settlement, the Browns used some of the trust funds to buy a house and farmland on Dunlap Road, while retaining their previous house on Stout Road. The Browns also used about $100,000 from the trust to improve the Dunlap property to accommodate Kelly's special needs. They added three bedrooms and installed a swimming pool and an elevator.
 {¶ 5} In addition to the Dunlap house, the Browns purchased new vehicles for themselves and their parents. They also bought registered quarter horses and all the equipment needed for the horses. Finally, they bought a pizza business, Angilo's Pizza, which Michael helped to run.
 {¶ 6} In February 2001, the Browns separated. After the separation, Michael resided at the Stout Road residence, while Penny continued to live on Dunlap with the two children. The parties eventually agreed that Penny would be the legal custodian and residential parent for both children.
 {¶ 7} In April 2001, the Browns agreed to hire Joseph Schaffer to appraise the Dunlap property. Schaffer valued the property at $796,400. Schaeffer valued the 10 acres of the homesite at $560,000 and the undeveloped 38.125 acres at $236,400. At the time of the Browns' separation, the Dunlap property had two mortgages totaling almost $700,000.
 {¶ 8} The pizza business was closed in November 2001 and then sold at a loss. After the Browns' separation, Penny obtained an order restraining Michael from entering the Dunlap property. Penny then had a difficult time caring for the horses, and having no luck selling them, she eventually gave them away.
 {¶ 9} The domestic relations court held four hearings throughout 2003 in which both Michael and Penny testified about their many disputes regarding the division of their real and personal property. The magistrate made a decision dividing all the property, and both parties filed objections to the decision. The trial court then entered a decision on the objections.
 {¶ 10} Michael now appeals the trial court's decision with two assignments of error, and Penny cross-appeals with one.
 II. Equitable Division {¶ 11} In his first assignment of error, Michael argues that the trial court ordered an inequitable division of the marital property. Specifically, he claims (1) that the trial court abused its discretion when it did not correctly calculate the value of the Dunlap property and failed to order the sale of the property; (2) that he was not credited for funds that were withdrawn from a joint bank account to pay the mortgage and taxes for the Dunlap property; (3) that the trial court erred in failing to award him property that Penny did not object to him receiving; and (4) that the trial court abused its discretion when it did not find Penny culpable of financial misconduct for giving away the horses.
 {¶ 12} The trial court is vested with broad discretion in fashioning an equitable division of marital property.[1] In fashioning an equitable property division, the trial court should start from the premise that marital property should be divided equally between the parties.[2] The trial court is further required to consider the relevant factors in R.C. 3105.171(F), as well as any other factor it finds relevant to an equitable distribution.[3]
 {¶ 13} A reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court's disposition of marital property was an abuse of discretion.[4] An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[5]
A decision is unreasonable if it is unsupported by a sound reasoning process.[6]
 {¶ 14} Michael argues that the trial court abused its discretion by not correctly calculating the value of the Dunlap property. He notes that Schaffer appraised the property in April 2001, but then testified in January 2003 that property values in Colerain Township had increased at a rate of three percent per year since the appraisal. In its decision, the trial court used the appraised value of the property. Michael claims the magistrate undervalued the property by at least $48,500.
 {¶ 15} But on cross-examination Schaffer testified that he did not have a "real exact handle" on property value increases in Colerain Township. He testified that, in general, in the five counties of greater Cincinnati, property values had increased approximately three percent per year. He then acknowledged that all properties did not appreciate at the same rate, and that he had not updated his appraisal on the Dunlap property.
 {¶ 16} We conclude that it would have been speculative for the trial court to estimate an appreciated value for the Dunlap property at the time of its decision. Therefore, the trial court did not abuse its discretion when it used the appraised value in its property distribution.
 {¶ 17} Michael next claims that the court should have ordered the sale of the Dunlap property. He contends that Penny did not have sufficient funds to pay for all the obligations on the property. He also cites Schaffer's testimony that the highest and best use for the property would have been to allocate ten acres to the existing residence and to use the balance for residential development.
 {¶ 18} The magistrate's findings of fact estimated that the marital equity in the Dunlap property was $7,814.09. The magistrate concluded that a sale of the property would result in a net loss to the parties. There is no evidence in the record that Penny had failed to keep current any of the required payments for the Dunlap property.
 {¶ 19} Furthermore, $100,000 of Kelly's trust fund was spent to remodel the Dunlap property. The remodelling improved the property specifically for Kelly's special needs. We conclude that the trial court did not abuse its discretion by not ordering a sale of the property.
 {¶ 20} Michael next argues that he was not credited for funds that were withdrawn from a joint bank account to pay the mortgage and taxes for the Dunlap property. In 2002, the parties agreed that funds from a joint PNC Bank account would be automatically withdrawn and used to pay the Dunlap mortgage. The agreed entry did not require that the funds be charged against Penny.
 {¶ 21} The same entry also stated that funds from the same PNC account were to be used to pay the arrearage and mortgage on the Stout Road property. But the entry also specifically required that any money withdrawn from the joint account and used for the Stout Road property be charged against Michael's interest in that marital property. From the entire entry, it is clear that the parties did not intend to have the funds used for the Dunlap property charged against Penny. Therefore, the trial court did not abuse its discretion when it failed to credit the funds in Michael's favor.
 {¶ 22} Michael next argues that the trial court erred when it failed to award him items of personal property that Penny did not object to him receiving. The record reveals that Penny began testifying on cross-examination about the items in question. Her counsel then objected, at which point the magistrate directed that a master list be prepared and presented for all household items in dispute. Such a list was never submitted to the court.
 {¶ 23} The magistrate's findings of facts stated, "The evidence is persuasive that Husband has not accurately portrayed the items that he has either received and which are currently in his possession. From the evidence, it appears that as to the basic tools and personal property the parties' have divided those items relatively equally." Based on the record, we conclude that it was not an abuse of discretion for the trial court not to award Michael certain items of personal property.
 {¶ 24} Finally, Michael argues that the trial court erred by not finding that Penny had committed financial misconduct when she gave away the horses. Much testimony was presented concerning the horses. Penny testified that she tried to sell the horses without any success and that they were costing her between $200 and $300 a month to maintain. The magistrate concluded, "No evidence was presented to prove that Wife did not make a diligent effort to sell the horses in order to recoup some money from the parties' investment. Therefor Wife will not be charged with having wasted an asset." We see no abuse of discretion in the trial court's decision.
 {¶ 25} Having addressed all Michael's arguments that the trial court abused its discretion and ordered an inequitable property distribution, we overrule Michael's first assignment of error.
 III. Witnesses {¶ 26} In his second assignment of error, Michael argues that the trial court erred when it did not permit him to present two witnesses at trial.
 {¶ 27} At trial, Michael's counsel attempted to call Thomas Collard, a realtor with Sibcy Cline, to testify about the value of the Dunlap property. He also attempted to call Kathy Ferris, Kelly's former caretaker, to testify about what household items were located at the Dunlap property. Penny's counsel objected to both witnesses, stating that he had not been informed that either of them would testify.
 {¶ 28} The record shows that on September 10, 2001, the magistrate ordered that witness lists be exchanged two weeks before trial. The record further indicates that Michael was served with interrogatories asking him to list all witnesses whom he intended to call. Given that Michael failed to provide notice of the two witnesses, the trial court did not err when it did not allow the witnesses to testify. Therefore, we overrule Michael's second assignment of error.
 IV. Attorney Fees {¶ 29} In Penny's one assignment of error, she argues that the trial court erred when it modified the magistrate's award of attorney fees to her.
 {¶ 30} Penny's attorney, Joel Moskowitz, testified that he had earned over $48,000 in fees while working on this case. The magistrate found that the attorney fees were reasonable, further stating that Michael had engaged in conduct that precipitated Penny's incurring fees that otherwise would not have been incurred. The magistrate accordingly ordered that Michael contribute $20,000 toward Penny's attorney fees.
 {¶ 31} Michael objected to the award. The trial court, after reviewing the record, modified the award to $8,000. The court then noted parenthetically that it "did not consider any fees generated by Mr. Michael Moskowitz as he did not testify during the proceedings before the magistrate." Penny argues that the fee award should have been reduced only by the amount that Michael Moskowitz earned, $971.25.
 {¶ 32} But the court did not state that it had reduced the award simply by the amount of fees that Michael Moskowitz had earned. Given the general rule that, absent a strong showing of need, attorney fees are not awarded to a prevailing party in civil lawsuits, we conclude that the trial court did not err when it reduced the fee award from $20,000 to $8,000.[7] Therefore, we overrule Penny's one assignment of error.
 {¶ 33} Having overruled all the assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] See Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293, paragraph two of the syllabus.
[2] R.C. 3105.171(C).
[3] R.C. 3105.171(F)(9).
[4] See Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222, 459 N.E.2d 896.
[5] See Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131,541 N.E.2d 597, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140.
[6] See AAAA Enterprises Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597; Statev. Echols (1998), 128 Ohio App.3d 677, 699-700, 716 N.E.2d 728; see, also, State v. Chapple (1983), 135 Ariz. 281, 297, 660 P.2d 1208.
[7] See Dillon v. Dillon (Dec. 5, 1980), 6th Dist. No. L-79-251.