DECISION. *Page 2 
{¶ 1} Defendant-appellant United Steel Workers of America, Local 14340 ("the union), appeals from the trial court's judgment holding it in contempt for violating the terms of an injunction pertaining to picket-line activity. We affirm.
 Facts {¶ 2} The union and its members went on strike in response to a contract dispute with plaintiff-appellee, the Cognis Corporation. After several months of picketing at the Cognis plant, the parties entered into an agreed injunction defining the parameters of acceptable picket-line activity. In pertinent part, the injunction prohibited the union from placing any item capable of causing tire damage at any plant entrance or exit. Cognis later moved the trial court to hold the union in contempt, arguing that, on October 17, 2005, the union violated this provision. At the contempt hearing, a number of Cognis employees testified that they had found jack spikes, screws, or nails in their tires after entering Cognis's gate 6 on the morning in question, and that their tires had been damaged as a result. Several of these witnesses stated that there were two lone men picketing at gate 6 when they had entered the plant, and that no one else had been in the area. Security guard Ed Seaberg identified the gate-6 picketers as union vice-president Ronald Rentschler and union member Dan Enders. At the contempt hearing, Rentschler disavowed any involvement in the incident.
 {¶ 3} Following the hearing, the trial court found that "the evidence shows beyond any doubt that a number of Cognis employees drove over jack spikes or had jack spikes placed in their tires. Most of this occurred on October 17 from 7 a.m. — 8 *Page 3 
a.m. at the Cognis plant. During this time a union official, Ron Rentschler, and union member, Dan Ender, were picketing at the gate where most of this took place. I do not know which one placed the spikes that were run over but the overwhelming evidence is that one or both of them did it." The trial court held the union in contempt because "the placing of the jack spikes at the plant gate on October 17, 2005 was committed or sanctioned by a union official, Ron Rentschler * * * ." The court ordered the union to reimburse Cognis $675.08-the amount the company had paid to employees to cover the cost of repairing their damaged tires. This appeal followed.
 Standard of Review {¶ 4} Decisions in contempt will not be reversed on appeal absent an abuse of discretion.[1] An abuse of discretion connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable.[2] In its sole assignment of error, the union attacks the weight and sufficiency of the evidence in support of the trial court's order. In essence, the union argues that the trial court abused its discretion by holding it in contempt based upon the evidence presented.
 Criminal Versus Civil Contempt {¶ 5} The quantum of evidence necessary to support the trial court's judgment turns on whether the contempt proceeding was civil or criminal in nature. We determine the nature of the proceeding by examining the sanction imposed.[3] The purpose of a criminal contempt sanction is to vindicate the authority of the court *Page 4 
and to punish past acts of disobedience.[4] By contrast, a civil contempt sanction is intended "to coerce compliance with the underlying order or to compensate the complainant for loss sustained by the contemnor's disobedience."[5] The sanction in this case compensated Cognis for money damages arising from the union's violation of the injunction. There is no indication in the record that it was intended to vindicate the authority of the court or to punish acts of disobedience. We therefore find that the contempt proceeding was civil in nature. A civil contempt order must be supported by "clear and convincing" evidence,[6] which is evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[7]
 Analysis {¶ 6} Contempt is generally defined as disobedience of a court order.[8] And R.C. 2727.11 specifically provides that "an injunction * * * granted by a judge may be enforced as the act of the court and disobedience thereof may be punished by the court * * * as contempt."
 {¶ 7} The union first argues that it could not have been held in contempt for the actions of union vice-president Rentschler because there was no clear and convincing evidence that the union had authorized, participated in, or ratified Rentschler's actions. The union cites the Norris-LaGuardia Act[9] and a number of intentional-tort cases in support of its position that a union cannot be held liable for *Page 5 
the actions of its officers unless it expressly authorized or ratified the act at issue. But in State v. Local Union 5760, United Steel Workersof America, the Ohio Supreme Court held that "[a] labor union may be liable for contempt of court based upon the contemptuous acts of its union officials. In such case, the acts of such officials are deemed to be acts of the union."[10] This court is, of course, bound by that holding. And we find no legal basis upon which to extend tort-law standards to actions in contempt.[11] This argument has no merit.
 {¶ 8} The union next argues that it had taken reasonable measures to ensure compliance with the court's injunction and therefore that it should not have been held in contempt for Rentschler's actions. This argument is simply a variation of the union's first argument, and we overrule it on the same grounds.[12]
 {¶ 9} Finally, the union argues that the trial court's finding that Rentschler had placed or had sanctioned the placement of jack spikes at gate 6 was against the weight of the evidence. It is well-settled that "[j]udgments supported by some competent, credible evidence going to all the essential elements of a case will not be reversed by a reviewing court as being against the manifest weight of the evidence."[13] The union contends that the trial court should have believed Rentschler's testimony that he had not been involved in the jack-spike incident. But there was competent, credible evidence to support the trial court's finding. A number of Cognis employees testified that there had been two men picketing at gate 6 on the date in question, that their tires had been damaged by jack spikes, nails, or screws after they had entered *Page 6 
gate 6, and that no one else had been in the area. Cognis's security guard identified Rentschler as one of the gate-6 picketers. We therefore hold that the trial court's finding is not against the weight of the evidence.
 {¶ 10} In sum, because the trial court found that a union official had violated the court's injunction, and because this finding is supported by the record, all of the union's arguments fail. The union's sole assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed. PAINTER, P.J., and DINKELACKER, J., concur.
[1] State ex rel Celebrezze v. Gibbs (1991), 60 Ohio St.3d 69, 75,573 N.E.2d 62.
[2] AAAA Enterprises Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.
[3] Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253,416 N.E.2d 610.
[4] Contex, Inc. v. Consolidated Technologies, Inc. (1988),40 Ohio App.3d 94, 95, 513 N.E.2d 1353.
[5] Id at 96, 513 N.E.2d 1353.
[6] Brown, supra, at 253, 416 N.E.2d 610; Contex, supra, at 96, 513 N.E.2d 1353.
[7] Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
[8] Wyndham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55,271 N.E.2d 815, paragraph one of the syllabus; see, also, R.C. 2705.02(A).
[9] Section 106, Title 29, U.S. Code.
[10] (1961), 172 Ohio St. 75, 173 N.E.2d 331, paragraph eight of the syllabus, reversed on other grounds, Brown, supra.
[11] Cf. State ex rel Straube v. 37415 Euclid Ave., 11th Dist. No. 2005-L-186, 2006-Ohio-4667, at ¶ 14.
[12] See Local Union 5760, United Steel Workers of America, supra.
[13] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus. *Page 1