OPINION
{¶ 1} This is an appeal by plaintiff-appellant, William P. Bringham Co., L.P.A., from a Franklin County Municipal Court judgment for appellant in the amount of $2,028.25, plus court costs and ten percent interest from the date of judgment.
 {¶ 2} On February 25, 2003, appellant filed a complaint in Fairfield County Municipal Court against defendant-appellee, James Luke Williams, seeking payment on an account. In the complaint, appellant alleged that appellee owed the sum of $4,656.42, plus interest. By entry filed July 31, 2003, the case was transferred to the Franklin *Page 2 
County Municipal Court because appellee lived in Franklin County. On August 22, 2003, appellee filed an answer and counterclaim. In the counterclaim, appellee asserted a cause of action for breach of contract and also requested attorney fees.
 {¶ 3} At trial, appellant called appellee as a witness, as on cross-examination. Appellee is the father of Noah Williams, born November 24, 1999. Micah Gabrielle Spillman is the mother of Noah. In October of 1999, appellee met with appellant to discuss appellee hiring his services as a lawyer regarding a paternity determination of Noah, who at that time had not been born. Appellee wanted to establish that he was the father, and he also wanted to pursue full custody of the child. Appellee and appellant entered into a fee agreement.
 {¶ 4} Administrative proceedings were initiated in Knox County, where Spillman resided. A child support order was subsequently issued by the Knox County Juvenile Court. Appellee denied discussing with appellant whether to investigate the lifestyle of Spillman by a private investigator. Appellee mentioned to appellant that he had loaned some funds to Spillman. A demand letter was later sent to Spillman, but there was no response. Appellant filed an action to recover the funds in Athens County.
 {¶ 5} In July 2000, appellee decided to seek new counsel. Appellee thought appellant had made some billing mistakes, and he requested a review of billing records. Appellant wrote appellee a letter stating that he did not believe any adjustments were warranted. Appellee paid appellant a total of $1,625 for services rendered.
 {¶ 6} On July 28, 2000, appellee went to appellant's office and indicated his disagreement with items that were billed. According to appellee, he was billed for items he had not authorized, such as filing the case in Athens County regarding the loan and the letters to private investigators and doctors. *Page 3 
 {¶ 7} Appellee contacted attorney Sharon Downing Hendrickson in 2000 to represent him and to finalize the case involving collection of funds in Athens, Ohio, and the allocation of parental rights and responsibilities in Knox County. The action in Athens County was eventually settled. Hendrickson billed appellee a retainer fee of $1,200, but did not bill more for resolving the actions. Hendrickson indicated surprise at the amount appellee had been charged by his previous attorney.
 {¶ 8} Appellant testified regarding the amount appellee owed. Appellant consulted with appellee on October 9, 1999, regarding establishment of paternity for Noah, a child who had not yet been born. Appellant met with appellee and appellee's father on that date and appellee signed a fee agreement. Appellee paid a $500 retainer and initial consultation fee.
 {¶ 9} On December 3, 1999, appellant contacted the Knox County Juvenile Court regarding documentation necessary to initiate a paternity proceeding. Appellant stated that he traveled to Columbus to The Ohio State University Law Library because the Knox County Law Library was temporarily closed for renovations to research the law regarding the rescission of acknowledgment of paternity. On April 22, 2000, appellee made a payment in the amount of $1,000.
 {¶ 10} On June 3, 2000, appellant began preparing letters to private investigators that appellee asked him to contact regarding surveillance of Spillman. According to appellant, appellee also wanted psychological tests performed.
 {¶ 11} On July 28, 2000, appellee came to appellant's office and expressed dissatisfaction with the work, and explained that he had retained another attorney. On September 18, 2000, appellant sent appellee a bill for services to finalize matters *Page 4 
regarding the transfer of the case to Hendrickson. Appellant testified that he believed the services he rendered were necessary and reasonable.
 {¶ 12} James Peter Williams, the father of appellee, testified on behalf of appellee. Williams denied ever entering into a fee agreement with appellant for services. He also never authorized the filing of a complaint requesting grandparent rights. Williams received a letter from appellant indicating he was no longer representing him. Williams called appellant and told him "he never has represented me." (Tr. at 159.)
 {¶ 13} Appellee testified on his own behalf. Appellee is a sheriff with the Fairfield County Sheriff's Department. Appellee had discussions with appellant regarding the fact that Spillman owed him money he had loaned her. Appellee wanted to use this fact as leverage for her to agree to put his name on Noah's birth certificate. Appellee was unaware of a suit filed in Athens County until after it was filed. Appellee denied authorizing appellant to file that action. Appellee also denied authorizing appellant to hire an investigator or conduct DNA testing. Appellee told appellant his mother's address on at least three occasions, but filings by appellant contained the wrong address, which led to problems with the temporary orders. Appellee stated that he never denied being Noah's father, and, therefore, he never authorized research on rescission of acknowledgement of paternity. Appellee testified that he believed he had paid appellant everything he was entitled to receive for his services.
 {¶ 14} At the close of the evidence, the trial court announced that it was finding in appellant's favor in the amount of $4,650.68, subject to deductions. More specifically, the court deducted $297.43 in interest and $1,125 for research and trips to The Ohio State University Law Library, and the $1,200 paid to Ms. Hendrickson, leaving a total judgment in the amount of $2,028.25, plus costs and interest. The court also dismissed appellee's *Page 5 
counterclaim "to the extent that the set-off is being awarded as indicated by the Court, that's for $1200 that was paid to Miss Hendrickson." (Tr. at 189.)
 {¶ 15} Following the hearing, appellant made a request for findings of fact and conclusions of law. By judgment entry filed October 26, 2004, the court awarded judgment in favor of appellant in the amount of $2,028.25. The trial court rendered findings of fact and conclusions of law by entry filed January 27, 2006.
 {¶ 16} On appeal, appellant sets forth the following four assignments of error for review:
 1. The trial court erred in granting judgment that is not supported by the record.
 2. The trial court erred in deducting an amount from the account of Appellant for Appellant performing legal research for Appellee's cases for which Appellant represented Appellee.
 3. The trial court erred in setting off against what was owed on the account of Appellant with Appellee the amount paid by Appellee to his successor attorney.
 4. The trial [c]ourt erred in reducing the account by the amount of interest charged by Appellant on past due amounts owed on the account.
 {¶ 17} By the first assignment of error, appellant contends that the trial court erred in granting a judgment that is not supported by the record. Judgments which are supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. CE. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. In order to find that the trial court abused its discretion, we must find more than an error of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), *Page 6 5 Ohio St.3d 217, 219. Most instances of an abuse of discretion result in decisions that are unreasonable as opposed to arbitrary and capricious. AAAAEnterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157. A decision that is unreasonable is one that has no sound reasoning process to support it.
 {¶ 18} In this assignment of error, appellant argues that the trial court made mathematical errors in the judgment. Initially, appellant argues that the balance with which the trial started was incorrect. Appellant argues that $4,656.42 should have been used as the amount appellee owed, rather than $4,650.68 that the trial court used. However, plaintiff's Exhibit E, a summary prepared by appellant, clearly shows $4,650.68 as the balance of the account. Appellant's argument regarding the balance owed has no merit.
 {¶ 19} Appellant also argues that the judgment is not supported regarding the deductions the trial court made for interest on the balance owed. The trial court deducted $297.43 in interest from the $4,650.68, but appellant contends that the total is $262.58, not $297.43. (Tr. at 189.) Appellant argues the transcript reflects interest charged on the past due open account of $190.25, $9.53, $26.66, and $36.14. (Tr. at 101, 110, 117, 119.) Actually, the transcript reflects $1.72 interest on a balance of $190.25, $9.53, $26.66, and $36.14 (Tr. at 101, 110, 117, 119) for a total of $74.05. However, plaintiff's Exhibit E reflects an additional $35.78, $58.92, $79.11, $59.53, and $64.09 ($297.43) for a total of $358.03. The trial court only deducted the interest reflected on the bills from October 2000 through May 2001, but could have deducted a total of $358.03. The record does support the trial court's deduction, and, in fact, supports deducting $60.60 more.
 {¶ 20} Appellant also contends that the trial court's deduction of $1,125 for nine hours of research conducted in Columbus is not supported by the record because he only *Page 7 
billed for 7 hours and 28 minutes. (Plaintiff's Exhibit E.) From examining plaintiff's Exhibit E, we conclude that 8 hours and 45 minutes can be attributed to research and trips to Columbus (including time from 6/30/00), which totals $1,093.75. The trial court may have deducted $31.25 too much. However, given that the record supports a larger deduction than the trial court deducted for interest, appellant's first assignment of error is not well-taken.
 {¶ 21} By the second assignment of error, appellant contends the trial court erred in deducting an amount from the account for the time spent performing legal research. As stated in the first assignment of error, appellant traveled to Columbus several times to conduct research regarding the law as to rescission of acknowledgment of paternity. Appellant testified that he traveled to The Ohio State University Law Library because the Knox County Law Library was temporarily closed due to building renovations. He also traveled to the Columbus Law Library. Appellee testified that he never authorized appellant's trips to Columbus and never disputed that Noah was his child. (Tr. at 170.) Once he signed the paperwork, he acknowledged Noah was his son and requested visitation. (Tr. at 170.) Thus, the trial court could have believed that appellee never intended to rescind the acknowledgement of Noah and that the research was unnecessary. Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, appellant's second assignment of error is not well-taken.
 {¶ 22} By the third assignment of error, appellant contends that the trial court erred in setting off against what was owed on the account the amount paid by appellee to his successor attorney. The trial court deducted $1,200 from the award due to the retainer appellee paid Ms. Hendrickson after appellant no longer represented appellee. *Page 8 
 {¶ 23} Appellant argues that the trial court found that he had not breached his contract with appellee and, therefore, that there is no basis for a setoff "on any counterclaim that was not commenced with[in] the one year after the termination of the attorney-client relationship" between appellant and appellee. Appellant further argues that such a setoff is unjust where there has been no showing of a breach of contract or legal malpractice.
 {¶ 24} First, we disagree with appellant's suggestion that appellee could seek a setoff or recoupment only through a counterclaim for legal malpractice filed within the one-year statute of limitations after termination of their attorney-client relationship. Statutes of limitations do not bar strict defenses, i.e., defenses that "arise out of the same transaction as the plaintiff's claim for relief, and when it is offered to reduce the plaintiff's right to relief." Riley v.Montgomery (1984), 11 Ohio St.3d 75, 78. Thus, while a statute of limitations might bar appellee's counterclaim for setoff or recoupment based on legal malpractice, it would not bar appellee from raising the affirmative defense of setoff as a result of appellant's "actions," or recoupment as a result of appellant's alleged "malpractice," as he did in his fourth and fifth affirmative defenses, respectively, to appellant's complaint.
 {¶ 25} The trial court stated that it was finding for appellant on his complaint in the amount of $4,650.68, but was subtracting from that amount the "$1200 that was paid to Miss Hendrickson." (Tr. at 189.) Appellant argues that this reduction was improper in the absence of a showing of legal malpractice or breach of contract, but he cites no authority that actually supports this proposition.
 {¶ 26} In the end, whether we refer to the $1,200 as a setoff, recoupment or simply a reduction, the trial court has the discretion to determine the reasonableness of an award *Page 9 
for attorney fees. Meacham v. Miller (1992), 79 Ohio App.3d 35;Atwood Resources, Inc. v. Lehigh (1994), 98 Ohio App.3d 293. Based on the evidence before it, the court could properly conclude that, even if appellant's actions did not rise to the level of breach or malpractice, appellant's actions caused appellee to pay an additional $1,200 for work he thought he had hired appellant to perform and that fees owed to appellant should be adjusted accordingly. We find no abuse of discretion. Therefore, we overrule appellant's third assignment of error.
 {¶ 27} By the fourth assignment of error, appellant contends that the trial court erred in reducing the account by the amount of interest charged by appellant on past due amounts owed on the account. The trial court granted appellant four percent interest on the judgment from the date of the judgment.
 {¶ 28} The contract provides that "[u]npaid balances shall accrue interest according to law if not paid within thirty (30) days." (Plaintiff's Exhibit C.) Appellant sought ten percent interest on the unpaid balance to June 2, 2004, and four percent per annum for the remainder of the time that the judgment remained unsatisfied.
 {¶ 29} R.C. 1343.03(A) provides, as follows:
 In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any * * * or other instrument of writing, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract. * * * *Page 10 
 {¶ 30} This statute was amended June 2, 2004, in H.B. No. 212, and previously provided that the interest rate was ten percent per annum. Now, the interest rate is determined by R.C. 5703.47, which provides that the Ohio Tax Commissioner sets the rate for each year. The provisions of Section 3 of H.B. No. 212 provided that, for pending actions, such as this one, to calculate the interest the ten percent should be applied until June 2, 2004, and the interest rate provided for in R.C. 1343.03 after that date. Thus, ten percent interest should be calculated on the amount due until June 2, 2004, and the statutory rate thereafter, which was four percent in 2004.
 {¶ 31} In his brief, appellee practically concedes this issue was incorrectly determined by the trial court. Therefore, the trial court should determine on which date the interest begins to run and re-calculate the interest. Appellant's fourth assignment is well-taken.
 {¶ 32} For the foregoing reasons, appellant's first, second, and third assignments of error are overruled, appellant's fourth assignment of error is sustained, the judgment of the Franklin County Municipal Court is affirmed in part and reversed in part, and this cause is remanded to that court for a redetermination of the amount due from appellee and the correct corresponding interest, consistent with this opinion.
Judgment affirmed in part and reversed in part; cause remanded withinstructions.
 PETREE and FRENCH, JJ., concur. *Page 1