[Cite as *Plaza Assocs., Ltd. v. Montgomery Cty. Aud.*, 2013-Ohio-1373.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| PLAZA ASSOCIATES LTD. | : | |
| | : | Appellate Case No.   25275 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No.   2010-CV-8210 |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY AUDITOR, | : | (Civil Appeal from |
| et al. | : |  Common Pleas Court) |
| | : | |
| Defendant-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of April, 2013.

. . . . . . . . . . .

DAVID M. RICKERT, Atty. Reg. #0010483, Dunlevey Mahan & Furry, 110 North Main Street, Suite 1000, Dayton, Ohio 45402-9837
  Attorney for Plaintiff-Appellant, Plaza Associates Ltd.

MATHIAS H. HECK, JR., by LAURA G. MARIANA, Atty. Reg. #0063204, Montgomery County Prosecutor's Office, Appellate Division, 301 West Third Street, Post Office Box 972, Dayton, Ohio 45422
  Attorney for Defendant-Appellees, Montgomery County Auditor and
  Montgomery County Board of Revision

DEREK HAGGERTY, Atty. Reg. #0086312, and JAMES STUCKO, JR., Atty. Reg. #0060964, Scott, Scriven & Wahoff, LLP, 50 West Broad Street, Suite 2600, Columbus, Ohio 43215
  Attorneys for Defendant-Appellee, Miamisburg City School District Board
  of Education

. . . . . . . . . . . .

HALL, J.

{¶ 1}   This case concerns the 2009 value for tax purposes of the Holiday Inn Dayton Mall, located in Miamisburg, Ohio, in Montgomery County.[1] The Montgomery County Auditor had determined that the true market value of this property for 2009 tax purposes was $5,434,170.00. Appellant filed a complaint contesting the auditor's valuation with the Montgomery County Board of Revision. Evidence was presented from an appraiser hired by the appellant that valued the property at only $2.6 million. However, there was also evidence that the property was being marketed by appellant for the price of $5,500,000.00. The county Board of Revision valued the property at $4,890,000. The trial court concluded that the appraisal was not probative evidence of the hotel's value and adopted the value determined by the board. We hold that the trial court did not abuse its discretion by rejecting the appraisal and adopting the board's determination of value. We affirm.

## I. Background

{¶ 2}   For 2009, the county auditor appraised the hotel's value as $5,434,170. The appellant, the hotel's owner, Plaza Associates Ltd., filed a complaint against valuation, claiming that the value of the hotel was only $2 million. The appellant hired an appraiser, Marshall Brulez, from the commercial real estate services firm CB Richard Ellis, to appraise the hotel. Brulez pegged the hotel's 2009 value for tax purposes at $2.6 million. The appellant amended its complaint to match this value.

---

[1] The property sits in the Miamisburg City School District. The district's board of education and the auditor are the appellees.

{¶ 3}    A hearing was held before the Board of Revision. The appellant presented the appraisal–Brulez's testimony and his written appraisal report. The appellant also presented the testimony of the hotel's manager, Ron Monte,[2] who testified that the hotel's vacancy rate had been increasing in recent years. The record contains notes from the Board of Revision stating, "Appraisal is not considered due to above concerns. Value reduced to account for additional vacancy." The "above concerns" noted were that the appraiser only visited the property on the day of the hearing, after preparation of his report; the property was "Marketed currently at $5,500,000"; "Income & Expense blended bet actual & market data"; and "only 2 sale comps were in Ohio."   The Board of Revision reduced the hotel's value to $4,890,000.

{¶ 4}    The appellant appealed the board's value determination to the trial court, which did not take additional evidence. The court rejected the appraisal, referring to the same reasons identified by the board, and concluded that "the appraisal submitted by Appellant is not probative evidence of (sic) that true value of the property differs from that set by the Board of Revision." Noting that the Board of Revision had already lowered the value to account for the hotel manager's low-vacancy-rate testimony, the trial court adopted the board's value determination.

## II. Review of the Alleged Error

{¶ 5}    In the sole assignment of error, the appellant alleges that the trial court erred by rejecting the appraisal and by adopting the Board of Revision's value determination.

### A. The Rejection of the Appraisal

{¶ 6}    Brulez is the managing director of CB Richard Ellis's Michigan office and is

---

[2] The trial court's decision spells the manager's last name this way. But in the hearing transcript it is spelled "Monty."

licensed in Ohio as a real-estate appraiser. He testified that he has been appraising hotels "almost since the beginning of [his] career in the mid '80s." (Tr. 6). Helping Brulez was Eran Singer. Singer is a senior real-estate analyst and appraiser and, though not licensed in Ohio, is licensed in Michigan as a real-estate appraiser. Brulez testified that Singer did the primary research for the appraisal. Brulez also said that he and Singer "specialize in doing hotels." (*Id*.).

{¶ 7} The "Self Contained Appraisal Report" is signed by both Brulez and Singer and consists of 85 pages plus seven addenda that contain supporting documents and reports. The introduction states that the appraisal is intended to be used in assessing the 2009 value of the hotel's real estate for tax purposes. The report notes that the hotel has not sold recently but that in September 2008 a contract was signed to purchase the hotel for $5.4 million, though the sale did not go through. Following the introduction are 20 photographs taken of the hotel's inside and outside. Then the report presents the analysis of several factors that affect the hotel's value: the Dayton area (an economic survey of the Dayton metro area as of October 2008); the hotel's neighborhood; the hotel market in the Dayton area and nationally (citing historical trends reports that examine the hotel and five other Dayton-area hotels that compete with it, showing trends in the hotels' occupancy rate, average daily rate, revenue per available room, supply, demand, and revenue); the physical site; improvements; zoning; tax and assessments; and the highest and best use of the property. The report then discusses the two relevant approaches to hotel valuation–the income-capitalization approach and the sales-comparison approach.

{¶ 8} The report explains that the income-capitalization approach "reflects the

subject's income-producing capabilities." (Appraisal Report, at 43). This approach estimates an income-producing property's value by converting its future income into a value. The conversion is done by capitalizing the property's net income. The analysis relies heavily on a property's operating data–its income and expenses. Here, the operating data used in the analysis came from the hotel manager, who testified that he gave Brulez reports that contained this data. The manager further testified that the information in the reports is accurate. The income-capitalization analysis concludes that the hotel's 2009 value is $2.6 million.[3]

{¶ 9}    The sale-comparison approach, explains the report, uses "sales of comparable properties, adjusted for differences, to indicate a value for the subject." (*Id*. at 42). The sale prices must be adjusted for differences like "location and accessibility, size, services and facilities offered, market conditions, chain affiliation, market orientation, management, rate structure, age, physical condition, date of sale, the highest and best use of the land, and the anticipated profitability of the operation." (*Id*. at 79). The report lists 14 hotels that were sold in the United States in 2008–two of which are in Ohio. No attempt is made, though, to adjust the sale prices. The report states that "[a]ny attempt to manipulate the necessary adjustments is insupportable and purely speculative." (*Id*.). The report explains that "when appraising hotels, the degree of comparability between the subject property and a comparable sale is usually so diverse that many subjective and unsubstantiated adjustments are required. Each adjustment represents a potential for error and thereby diminishes the reliability of this approach." (*Id*.). However, the 14 "comparable" hotel sales, most of which were other Holiday Inns, sold for an average of $47,491 per room, including the two Ohio comparables which sold for $19,333 and

---

[3]This amount is rounded down from the value actually obtained of $2,633,168.

$22,535 per room, whereas the appraiser's evaluation of the subject property is only $13,333 per room.[4]

{¶ 10} The sales-comparison analysis also looks at two non-comparable Dayton-area hotels sold between 2008 and early 2010. One of these hotels sold for $3.1 million in 2004. After being foreclosed on, the hotel was offered at auction in 2008 with a starting bid of $2.275 million. It eventually sold in 2010 for $2.1 million. The other hotel sold for $6.1 million in 2008. The hotel sold again in 2009 for only $2.6 million–57% less than it sold for just the year before. The report says that these sales are cited as evidence that the "market values for comparable lodging properties in the Dayton Metropolitan Area were declining as of the valuation date of this appraisal." (*Id*. at 80).

{¶ 11} The sales-comparison analysis does not conclude with a value for the hotel. The report explains that "[t]he comparables indicate a wide range in sales price per room and do not provide a clear indication of value for the subject." (*Id*.). Moreover, the report says, "the accuracy and applicability of this approach" is limited because "[t]he magnitude of the adjustments to each sale relative to the subject is significant." (*Id*.). The analysis instead concludes that the sales-comparison analysis "generally supports" the value obtained in the income-capitalization analysis. (*Id*.).

{¶ 12} The report states that the income-capitalization approach is the best approach for valuing hotels. It explains that "[f]actors such as the lack of recent comparable sales data and the numerous insupportable adjustments that are necessary often make the results of the

---

[4] We recognize that these comparable sales likely include the sale of furniture, fixtures and equipment, which are in addition to the raw real estate, but we note the comparable sale average to recognize the wide disparity between the evaluation and the comparables.

sales comparison approach questionable." (*Id*. at 43). Moreover, the report notes that hotel investors usually do not use the sales-comparison approach in making investment decisions. Instead, investors estimate market value using an approach like income-capitalization. "As an appraiser," says the report, "one attempts to mirror the actions of the marketplace." (*Id*.). "For this reason, the income capitalization approach produces the most supportable market value estimate, and it generally is given the greatest weight in the hotel valuation process." (*Id*.). The sales-comparison approach is generally used only to establish a likely range of values. In this appraisal, the value obtained using the income-capitalization approach is given "primary emphasis in the final value estimate." (*Id*. at 81).

{¶ 13} The trial court rejected the appraisal. A court "does not have to accept the valuation of any witness." (Citation omitted.) *DCWI Office N., L.L.C. v. Montgomery Cty. Aud.*, 195 Ohio App.3d 235, 2011-Ohio-4011, 959 N.E.2d 576, ¶ 49 (2d Dist.). But a court abuses its discretion if its decision to reject a valuation is unreasonable. *See id.* at ¶ 48. "A decision is unreasonable if it lacks a sound reasoning process." *Wellington Square, L.L.C. v. Clark Cty. Aud.*, 2d Dist. Clark No. 2009-CA-87, 2010-Ohio-2928, ¶ 27, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). A review under the abuse-of-discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or because the appellate court is less persuaded by the trial court's reasoning process than by the countervailing arguments. *AAAA Ents., Inc., supra* at 161, 553 N.E.2d at 601. The trial court concluded that the appraisal is not probative of the hotel's value because (1) Brulez did not

view the hotel in person before the report was prepared,[5] (2) only 2 of the 14 comparable hotels are located in Ohio, and (3) the sales-comparison analysis did not adjust the comparable hotels' sale prices to reflect differences with the subject hotel. In the paragraph rejecting the appraisal, the trial court did not specifically refer to the appraisal's focus only on the income-capitalization approach, or the property's marketing price. Nonetheless the court's conclusion was "[b]ased on the evidence before the court * * *" and the conclusion rejecting the appraisal immediately follows the paragraph with the court's reference to the marketing price of $5,500,000.00. In light of all of these factors and our deferential review, we cannot say that the trial court's decision to reject the appraisal is unreasonable.

## B. The Adoption of the Board of Revision's Value

{¶ 14}   The appellant, as the taxpayer, "'has the initial burden and obligation to prove the right to a reduction.'" *DCWI*, 195 Ohio App.3d 235, 2011-Ohio-4011, 959 N.E.2d 576, at ¶ 49, quoting *Murray & Co. Marina, Inc. v. Erie Cty. Bd. of Revision*, 123 Ohio App.3d 166, 172, 703 N.E.2d 846 (6th Dist.1997). This burden was met with the appraisal.

{¶ 15}   Because the hotel here had not sold recently, an appraisal was necessary. *Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 455, 459, 687 N.E.2d 426 (1997) (saying that "when an actual sale is not available 'an appraisal becomes necessary,'" quoting *State ex rel Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964)). The report states that, though the hotel was not ultimately sold, in September 2008 a contract was signed to purchase the hotel for $5.4

---

[5] It is undisputed that Brulez did not personally view the hotel before the report was completed, but his assistant viewed the property earlier. The appellees agree that Brulez's late view of the property is immaterial. Brief of Appellee at fn. 1.

million. Testimony corroborates this fact. Testimony also shows that the appellant's asking price for the hotel was $5.5 million. The weight to be accorded to this evidence was for the trial court to determine.

{¶ 16}  Finally, we recognize that the hotel's asking price does not necessarily reflect a true value. The Sixth District has observed that "[t]he market price is the maximum amount a willing buyer will pay to purchase the property." *Am. Tele-Legal Information Servs., Ltd. v. Lucas Cty. Bd. of Revision*, 6th Dist. Lucas No. L-06-1109, 2006-Ohio-5911, ¶ 25. Evidence of a property owner's asking price merely "represent[s] what the seller desires the price to be * * *, not what a prospective buyer would pay to purchase the property." *Id*. at ¶ 26. But here, the marketing price is similar to price in the 2008 contract that fell through. We therefore can not say that the trial court abused its discretion by referencing the marketing price in its analysis.

{¶ 17}  The sole assignment of error is overruled, and the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., and DONOVAN, J., concur.


Copies mailed to:

David M. Rickert
Mathias H. Heck, Jr.
Laura G. Mariani
Derek Haggerty
James Stucko, Jr.
Hon. Barbara P. Gorman