[Cite as *Janson v. Janson*, 2025-Ohio-3092.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| CHARLES JANSON | : |
| | :    C.A. No. 2025-CA-3 |
| Appellant | : |
| | :    Trial Court Case No. 1998 DR 0063 |
| v. | : |
| | :    (Appeal from Common Pleas Court- |
| CYNTHIA JANSON NKA SHAW | :    Domestic Relations) |
| | : |
| Appellee | :    **FINAL JUDGMENT ENTRY &** |
| | :    **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 29, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, PRESIDING JUDGE

TUCKER, J., and HUFFMAN, J., concur.

**OPINION**
GREENE C.A. No. 2025-CA-3

RONALD P. KELLER, Attorney for Appellant
DAVID S. PETERSON, Attorney for Appellee

EPLEY, P.J.

{¶ 1} Charles Janson appeals from the judgment of the Greene County Court of Common Pleas, Domestic Relations Division, after it found him in contempt for not complying with a court order requiring him to purchase and carry a term life insurance policy for his ex-wife Cynthia Janson (n.k.a. Cynthia Shaw). For the reasons that follow, the judgment of the trial court is affirmed.

## I.      Facts and Procedural History

{¶ 2} Charles and Cynthia were married in September 1975, but in January 1998, Charles filed for divorce. They converted the divorce pleading into a dissolution, and a separation agreement was incorporated. Article 12 of the agreement, entitled "Pension," read:

> The parties agree that Wife shall receive 50% of all pensions earned by the Husband during the course of their marriage. This includes but is not limited to 50% of the disposable retired pay received by the Husband from the United States Air Force. If at any time the Husband's military pension is merged into a Civil Service retirement, the Wife shall be entitled to an amount from the Civil Service retirement, equal that which she would have been entitled to from the Husband's military pension.
>
> The Husband shall purchase a Term Life Insurance Policy in the amount of

$100,000 naming the wife, Cynthia Janson, as his irrevocable beneficiary of said policy.

{¶ 3} In the summer of 2003, Cynthia filed a show cause motion, alleging that Charles was in contempt for failing to maintain the $100,000 life insurance policy to which he had agreed in the separation agreement. In January 2004, an agreed entry was filed, which stated the following:

1. The respondent Charles Janson has attained a level Term Life Policy, Grange Life Insurance Policy # [redacted] for $100,000 death benefit. He shall maintain the policy and pay timely premiums to maintain former spouse, Cynthia Janson[,] as irrevocable beneficiary in an amount not less than $100,000. Cynthia Janson shall execute any forms to grant her access to the policy.

2. The Movant will release any claim to Survivor Benefits in the Respondent's military retirement. Cynthia Janson shall sign any forms necessary to release her claim to said Survivor Benefits.

{¶ 4} In April 2024, Cynthia filed a motion to show cause and for attorney fees, alleging that Charles failed to renew the Grange life insurance policy of which she was the beneficiary. She asserted that because the policy has lapsed and Charles has remarried, if he were to die, she would receive nothing. After briefing from both sides, the trial court found Charles in contempt and ordered that he obtain a term life insurance policy with a death benefit of $100,000 and name Cynthia as the irrevocable beneficiary. He was further ordered to maintain the policy until the death of one of the parties.

{¶ 5} Charles appealed. His assignment of error contends that the trial court's contempt order was an abuse of discretion and against the manifest weight of evidence.

## II.     Separation Agreement and Contempt

{¶ 6} A petition for dissolution of a marriage must have attached a separation agreement signed by the parties. R.C. 3105.63(A)(1). The separation agreement is a contract, and if the trial court approves the agreement at a hearing on the petition, "it shall grant a decree of dissolution that incorporates the separation agreement." R.C. 3105.65(B). The statute further provides that "[t]he court has full power to enforce its decree." The enforcement mechanism is a contempt proceeding in the court that issued the order. *Smith v. Smith*, 2010-Ohio-31, ¶ 14 (2d Dist.).

{¶ 7} "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of the order." *Jenkins v. Jenkins*, 2012-Ohio-4182, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf*, 2010-Ohio-2762, ¶ 14 (1st Dist.).

{¶ 8} A person who is guilty of "'[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer,'" may be punished for contempt. *Smith* at ¶ 15, quoting R.C. 2705.02(A). "Each of those matters is a coercive pronouncement by or on behalf of a court that imposes a specific duty to act or refrain from acting on the person or persons to whom it is directed." *Id.*

{¶ 9} A trial court's decision to find a party in contempt is reviewed for abuse of discretion. *Barton v. Barton*, 2017-Ohio-980, ¶ 98 (2d Dist.). To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232 (1984). A court's decision is unreasonable "if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process persuasive." *AAAA Ents., Inc. v. River Place Community*

*Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 10} In this case, Charles argues that the relevant part of the separation agreement—that he shall purchase a $100,000 term life insurance policy naming Cynthia as his irrevocable beneficiary—does not contain a timeframe during which he is required to maintain the life insurance policy. He also points to the 2004 agreed entry which states that "[h]e shall maintain the policy and pay timely premiums to maintain former spouse, Cynthia Janson as irrevocable beneficiary," for the same idea: because there is no timeframe mentioned, he is free to discontinue paying into the plan whenever he pleases.

{¶ 11} We see it differently. First, we turn to the terms of the 2004 agreement which state that Charles "shall *maintain* the policy and pay timely premiums to *maintain* former spouse Cynthia Janson as irrevocable beneficiary[.]" (Emphasis added). Here we see "maintain" used twice, and each instance has a distinct meaning. The first "maintain" means "to continue something." *Black's Law Dictionary* (12th ed. 2024). The second means "to support someone financially; especially to pay alimony to." *Id*. Given the context, Charles was to continue paying for the required life insurance policy to support his ex-wife as the beneficiary. Because there was no time limit placed on the payments, the trial court found (and we agree) that a timeframe had not been intended, and Charles is required to maintain the policy until the death of one of parties.

{¶ 12} This finding is further supported by the consideration Cynthia gave for the life insurance policy. Although the 2004 agreed entry required Charles to maintain a life insurance policy for Cynthia, she released "any claim to Survivor Benefits in the Respondent's military retirement." Cynthia obtained the benefit of the $100,000 life insurance policy in exchange for relinquishing her claim to Charles's Air Force survivor benefits.

{¶ 13} Finally, the parties' express inclusion of definite timeframes in other provisions of their agreement reveals the indefinite nature of Charles's life insurance obligation to Cynthia, where no such limitation was stated. In Section 14 of the original 1998 separation agreement, the parties stipulated that while their children were minors, Charles was to provide life insurance naming the children as beneficiaries. Absent any limitation to the duration of Charles's duty to maintain life insurance for Cynthia, the parties demonstrated that his obligation was to continue indefinitely.

{¶ 14} Based on the terms of the agreement, we conclude that the trial court did not abuse its discretion when it found Charles in contempt for his failure to maintain the life insurance policy. His assignment of error is overruled.

### III.    Conclusion

{¶ 15} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.