[Cite as *In re J.L.*, 2016-Ohio-5649.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE: J.L. and R.L.                                  :
                                                      :
                                                      :
                                                      :        Appellate Case No. 26938
                                                      :
                                                      :        Trial Court Case Nos. 2014-8122 and
                                                      :        2014-8123
                                                      :
                                                      :        (Appeal from Domestic Relations
                                                      :        Court-Juvenile Division)
                                                      :

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Appellee

HILARY LERMAN, Atty. Reg. No. 0029975, 249 Wyoming Street, Dayton, Ohio 45409
        Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant, J.K.L., appeals from a decision of the Montgomery County Court of Common Pleas, Juvenile Division, adjudicating her children, J.L. and R.L., dependent children pursuant to R.C. 2151.04 and awarding temporary custody of her children to Montgomery County Children Services pursuant to R.C. 2151.353. For the reasons outlined below, the judgment of the juvenile court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On December 10, 2014, Officer Wendy Miller of the Kettering Police Department received a telephone call from the guidance counselor at an elementary school reporting concerns about two students, J.L. and R.L., who had not been in school over the past two weeks. The counselor further reported that the children's mother, J.K.L. ("Mother"), suffered from a mental illness.

{¶ 3} In response to the call, Officer Miller drove to the children's house in Kettering, Ohio, where she made contact with Mother on the front porch. Miller identified herself and explained that she was there to check on J.L. and R.L. Despite being in full uniform, Mother appeared uncertain that Miller was an officer and demanded to see Miller's badge, name tag, I.D., business card, and badge number. Miller complied with the request and Mother eventually let Miller inside the home on the condition that Miller allow Mother to videotape the entire encounter with her cell phone camera.[1]

{¶ 4} When inside the house, Mother began briskly walking around and yelling for J.L. and R.L. to come out, but the children did not appear. At this time, Miller observed

---

[1] According to Miller, Mother's cell phone never actually recorded anything.

that the house was very cluttered with boxes, papers, pictures, and knickknacks strewn around. Although Miller did not find the house to be filthy with trash, she noticed that every surface of the house was covered with random objects. In order to get from room to room, Miller had to walk through tiny paths between the items that were stored in the house. In addition, Miller observed that Mother was unable to open the bedroom doors completely due to the doors being blocked by personal belongings.

{¶ 5} After Mother could not locate the children, it became clear to Miller that Mother had no idea where J.L. and R.L. were, as Mother told Miller "they must have gone somewhere." Hearing Trans (Apr. 10, 2015), p. 19. At this point, Miller became concerned for the children's safety and requested more officers to assist her at the house. While waiting for the other officers to arrive, Miller spoke with Mother and asked her standard questions such as her birthday, phone number, and driver's license number. Mother explained that she did not want to answer those questions because the government was spying on her and she did not want the government to have that information. Specifically, Mother told Miller that she was being watched by satellites, a two-way camera in her television, and a secret camera in her closet.

{¶ 6} Mother also explained to Miller that J.L. and R.L. were not in school because one of the children had growing pains, whereas the other child wanted to stay home with their sibling. Miller observed that when Mother spoke she would often make spontaneous utterances that were unrelated to what they were talking about. This included Mother's claim that she was "not bipolar anymore" and that she does not "need to take medication." *Id.* at 21.

{¶ 7} When the other officers arrived at the house, they watched Mother while

Miller searched for the children. Miller went in the bedrooms and saw that the beds were covered with boxes, pictures, and piles of clothes. While searching one of the bedrooms, Miller crawled on the floor and eventually came face to face with R.L., who was sitting in a corner. After locating the child, Miller talked to R.L. for several minutes before R.L. would respond. When Miller asked R.L. where J.L. was hiding, R.L. pointed to the bed where Miller saw J.L. hiding underneath piles of clothes and baskets. When Miller asked the children why they did not come out when she called for them, the children advised that they were scared because their mother had told them that people were trying to break into their house and would take them away. The children also claimed that Mother instructed them that if any one came to the door, they were to be as quiet as possible.

{¶ 8} While Miller was searching for the children, one of the other officers, Officer William Torok, spoke with Mother. Torok found Mother to be polite and cordial, but he noticed that Mother's train of thought was very disconnected, as she did not stay on topic during their conversation. Torok was also concerned about Mother's mental health because she told him the government was spying on her through the television. Based on what the officers observed, they decided to have Mother admitted to Kettering Medical Center ("KMC") for purposes of having her mental health evaluated. Mother did not want to go to KMC and therefore was involuntarily admitted via a "pink slip" that was filled out by Torok.

{¶ 9} Shortly after Mother was transported to KMC by Torok, Janine Elders of Montgomery County Children's Services ("MCCS") arrived at the house and discussed with Officer Miller where to place the children while Mother was hospitalized. The children advised Miller of a step-grandmother who lived in Dayton. The step-

grandmother was contacted and she agreed to care for the children on a short-term basis.

{¶ 10} Mother was hospitalized from December 10, 2014 until December 23, 2014. During the hospitalization, Elders attempted to work out a temporary care agreement with Mother. Pursuant to the agreement, the children would be placed in temporary foster care without going to court and would be returned to Mother once she stabilized. However, on December 16, 2014, the probate court found Mother mentally incompetent and ordered forced medication. As a result, MCCS could no longer pursue the temporary care agreement because Mother lacked the mental capacity to enter into such an agreement.

{¶ 11} Because the step-grandmother could only provide short-term care for the children, on December 17, 2014, MCCS filed a dependency complaint through the State requesting the court to adjudicate J.L. and R.L. dependent children pursuant to R.C. 2151.04 and to award temporary custody of the children to MCCS pursuant to R.C. 2151.353. The matter was then scheduled for a hearing on February 24, 2015. Mother, who was represented by appointed counsel, appeared at the hearing and the parties agreed to have the hearing continued until April 10, 2015.

{¶ 12} Mother did not appear for the April 10, 2015 hearing. Instead, Mother's counsel advised the presiding magistrate that 30 minutes prior to the hearing, Mother left him a message informing him that she needed a 60-day continuance because she wanted to retain private counsel. Mother left a similar message with court personnel. The magistrate denied the request for a continuance finding that it was without good cause and for purposes of delay.

{¶ 13} In proceeding with the hearing, the magistrate heard testimony from Officer

Miller, Officer Torok, and MCCS caseworkers Janine Elders and Chris Dougherty. Thereafter, on April 17, 2015, the magistrate issued a written decision adjudicating the children dependent pursuant to R.C. 2151.04 and granting temporary custody to MCCS pursuant to R.C. 2151.353. Mother filed pro se objections to the magistrate's decision on May 1, 2015. The juvenile court judge then reviewed the matter and issued a written decision on October 29, 2015, overruling Mother's objections and adopting the magistrate's decision in its entirety.

{¶ 14} Mother now appeals from the October 29, 2015 decision of the juvenile court, raising two assignments of error for review.

**First Assignment of Error**

{¶ 15} Mother's First Assignment of Error is as follows:

THE SEIZURE AND CONFINEMENT OF [MOTHER] WAS CONTRARY TO THE REQUIREMENTS OF R.C. 5122.[10] AND THOSE ESTABLISHED BY THE SUPREME COURT OF THE UNITED STATES IN *O'CONNOR V. DONALDSON* WHERE THE MENTALLY ILL PERSON MUST BE FOUND DANGEROUS TO THEMSELVES OR OTHERS.

{¶ 16} Under her First Assignment of Error, Mother contends her emergency, involuntary commitment to KMC on December 10, 2014, was contrary to law because there was no evidence that she posed a substantial risk of physical harm to herself or others as is required by R.C. 5122.10.

{¶ 17} "R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily." *In re*

*Miller*, 63 Ohio St.3d 99, 101, 585 N.E.2d 396 (1992). R.C. 5122.10 governs the procedure for instituting emergency hospitalization and provides that any police officer may take a person into custody and may immediately transport him to a hospital if the police officer "has reason to believe that the person is a mentally ill person subject to hospitalization by court order under division (B) of section 5122.01 of the Revised Code, and represents a substantial risk of physical harm to himself or others if allowed to remain at liberty pending examination."

{¶ 18} In this case, however, Mother filed her notice of appeal from the juvenile court's decision adjudicating her children dependent under R.C. 2151.04 and the disposition awarding temporary custody of her children to MCCS under R.C. 2151.353. In other words, the decision which Mother appealed from is wholly unrelated to her emergency, involuntary commitment, as the juvenile court made no decision with regards to that matter.

{¶ 19} When an appeal is taken from a final judgment, only the judgment appealed from is brought before the appellate court, and upon review, the appellate court will affirm, modify or reverse the judgment appealed from. *Troyer v. Goodville Mut. Cas. Co.*, 5th Dist. Holmes No. CA-467, 1993 WL 107979, *1 (Apr. 1, 1993), citing *In re Kurtzhalz*, 141 Ohio St. 432, 48 N.E.2d 657 (1943). (Other citation omitted.) "[A]n appellate court lacks jurisdiction to review a judgment or order that is not designated in the appellant's notice of appeal." (Citation omitted.) *State v. Howard,* 2d Dist. Montgomery No. 21678, 2007-Ohio-3582, ¶ 10.

{¶ 20} Because the order appealed from in this case was the juvenile court's decision adopting the magistrate's dependency adjudication and disposition, which

concerns statutes and findings that are unrelated to Mother's involuntary commitment under R.C. 5122.10, we do not have jurisdiction to review this assignment of error.

{¶ 21} Mother's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 22} Mother's Second Assignment of Error is as follows:

THE COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO ALLOW [MOTHER'S] MOTION FOR A CONTINUANCE AND THUS THE COURT HELD A HEARING WITHOUT [MOTHER] BEING PRESENT AND SO DENYING HER THE RIGHT TO A FAIR TRIAL.

{¶ 23} Under her Second Assignment of Error, Mother contends the magistrate's decision denying her requested 60-day continuance of the April 10, 2015 adjudication and dispositional hearing was an abuse of discretion because she was absent from the proceeding and was therefore denied her right to a fair trial.

{¶ 24} The magistrate's denial of the continuance was journalized in the written decision of April 17, 2015, which also adjudicated the children dependent and awarded temporary custody to MCCS. Mother, however, failed to object to the denial of the continuance in her pro se objections to the magistrate's decision. Mother, therefore, has waived all but plain error on appeal.

{¶ 25} Even if Mother had objected to the magistrate's decision denying the continuance, her claim would still fail. "The granting or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial judge, which will not be reversed absent an abuse of discretion." *In re S.F.*, 2d Dist. Montgomery No. 26865, 2016-Ohio-

521, ¶ 17, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).  An " '[a]buse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable."  (Citation omitted.)  *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 26} Mont. Juv. Ct. Rule 5.8.2 provides that: "No case, in which a date has been fixed, for a[n] * * * adjudicatory or other hearings shall be continued, except for good cause, and only by the Judge or Magistrate to whom the matter is assigned."  Section 5.8.3 of the rule further provides that: "All continuance requests shall be made to the Judge or Magistrate by written motion within three (3) days of the trial or hearing."

{¶ 27} "A party has a right to a reasonable opportunity to be present at trial and a right to a continuance for that purpose, but a party does not have a right to delay a trial unreasonably, and a continuance based on a party's absence must be based on unavoidable, not voluntary absences."  *In re Richard, Laqueeda, Shennell & Dominique*, 2d Dist. Montgomery Nos. 14140, 14200, 1994 WL 702071, *3-4 (Dec. 14, 1994), citing *Hartt v. Munobe*, 67 Ohio St.3d 3, 9, 615 N.E.2d 617 (1993).

{¶ 28} In this case, there is no evidence indicating that Mother's absence from the April 10, 2015 adjudication and dispositional hearing was unavoidable and involuntary. Rather, the record establishes that 30 minutes before the hearing was scheduled to commence, Mother left messages with the court and her appointed counsel stating that she needed a 60-day continuance because she wanted to retain private counsel.  Mother gave no reason for her failure to appear at the hearing, which she had known about since February 24, 2015.  As previously noted, February 24th was the original hearing date that Mother attended and agreed to have continued until April 10th.  Therefore, Mother

had six weeks in which to obtain new counsel, yet she waited until the day of the hearing to notify the court and her attorney of that intention.   Moreover, all of the witnesses who were subpoenaed, i.e., Officer Miller, Officer Torok, and caseworkers Janine Elders and Chris Dougherty, were all in attendance at court on April 10th and ready to proceed with the hearing.

{¶ 29} Based on the foregoing, we do not find that it was unreasonable for the magistrate to find that Mother's request for a continuance was without good cause and for purposes of delay.   Mother gave no excuse for her failure to appear, did not follow local court rules in requesting a continuance, and all parties and witnesses were prepared to proceed with the hearing as scheduled.   Accordingly, the trial court did not abuse its discretion in denying the requested continuance of the adjudication and dispositional hearing.

{¶ 30} Mother's Second Assignment of Error is overruled.


## Conclusion

{¶ 31} Having overruled both assignments of error raised by Mother, the judgment of the juvenile court is affirmed.


. . . . . . . . . . . .


FROELICH, J. and HALL, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Meagan D. Woodall
Hilary Lerman
Robert Hanseman
Hon. Anthony Capizzi