[Cite as *Coppess v. Clark Cty. Bd. of Zoning Appeals*, 2019-Ohio-4179.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STEVEN J. COPPESS | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2019-CA-12 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-478 |
| | : | |
| CLARK COUNTY BOARD OF | : | (Civil Appeal from |
| ZONING APPEALS, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of October, 2019.

. . . . . . . . . . .

GREGORY R. FLAX, Atty. Reg. No. 0081206, 500 North Fountain Avenue, P.O. Box 1488, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellant

ANDREW P. PICKERING, Atty. Reg. No. 0068770, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Steven J. Coppess appeals from the trial court's decision, entry, and order affirming the Clark County Board of Zoning Appeals' decision to grant appellee Matthew Middendorf a variance to construct a pole barn on his property.

**{¶ 2}** In his sole assignment of error, Coppess contends the trial court erred in affirming the BZA's decision to grant Middendorf a variance.

**{¶ 3}** The record reflects that Coppess and Middendorf own adjacent residential properties. Because Middendorf's lot is .94 acres in size, it is subject to Clark County zoning regulations applicable to residential lots under one acre. As relevant here, those regulations provide (1) that residential lots under one acre can contain only two accessory buildings, (2) that the aggregate maximum size of the accessory buildings cannot exceed 1,500 square feet, and (3) that the maximum height of an accessory building cannot exceed 18 feet.

**{¶ 4}** In June 2016, Middendorf sought to build a 30-foot by 40-foot pole barn on his property. The proposed structure qualified as an "accessory building," and it violated each of the foregoing limitations. It would be the third accessory building on his property, it would be 19.5 feet high, and the aggregate square footage of the proposed pole barn and the two existing accessory buildings would be 2,114 square feet. Therefore, Middendorf applied for a variance. The matter proceeded to a June 23, 2016 hearing before the BZA.

**{¶ 5}** Middendorf testified at the hearing in support of his request. His "main point" was that if his lot were .06 acres larger, he would not need a variance because his proposed pole barn would comply with zoning regulations governing lots between one and two acres. (BZA Tr. at 15.) Middendorf proceeded to explain that he wanted the pole

barn for two reasons. The first was for "more storage." The second was to give his three sons a place to work on their cars "out of the rain" when they visited him. (*Id.* at 16.) The next witness was Ed Dow, who lived in the vicinity but not adjacent to Middendorf. After obtaining clarification about the zoning requirements, Dow simply stated that he was "in favor" of Middendorf's variance request. (*Id.* at 18.) The next witness was Coppess, who opposed the request. He testified that the proposed structure would "greatly detract from the park like setting," which included wetlands behind his property. (*Id.* at 20.) Coppess also expressed concern that the pole barn might lack gutters or downspouts, creating water drainage problems on his property. (*Id.* at 22.) Coppess then testified that Middendorf had a license to buy cars at auction, and he feared that the pole barn, which was to include a car lift, would be used commercially to repair those cars. (*Id.* at 22-28.) Middendorf testified in rebuttal and denied having any commercial intent. He stated that the proposed pole barn was for "strictly personal use." He explained that the purpose of the lift was to make it easier for his sons to work on their own cars. He asserted that he only buys a car once every few years. He also stated that the pole barn would have gutters and downspouts. Middendorf opined that the structure would be "beautiful." (*Id.* at 29-31.) Following his rebuttal, the BZA members unanimously voted to approve his request for a variance. (*Id.* at 35.) The oral decision was followed by a letter from the BZA regarding its approval. (Doc. #1 at Exh. B.)

{¶ 6} Coppess appealed the BZA's decision to the trial court. Based on its review of the record, the trial court upheld the BZA's decision. After correctly setting forth its standard of review, the trial court reasoned:

The question before this Court is whether the Clark County Board of

Zoning Appeals had substantial reliable and probative evidence to support its decision. After a thorough review of all of the evidence presented on appeal including the certified record, and written briefs of counsel, the Court finds that the Board's decision was based on reliable, probative and substantial evidence, and is in accordance with the law. Clearly, Mr. Coppess is of a different opinion than the board and urges this court to adopt his view. However, do so would require the court to reweigh the evidence and substitute Mr. Coppess's opinion for that of the board. The court is prohibited, for good reason, from doing so, as outlined above.

(Doc. #12 at 2-3.)

{¶ 7} On appeal, Coppess contends the trial court "abused its discretion and erred as a matter of law" in upholding the BZA's decision to grant Middendorf a variance. In support, he claims the record contains *no evidence* satisfying the specific criteria in Clark County's zoning regulations for granting a variance. The pertinent regulations provide as follows:

Variances. To authorize upon appeal *by reasons of exceptional narrowness, shallowness, shape, topographic conditions, or other extraordinary situation or condition of a lot*, a Variance from strict application of the provisions of these Regulations *to relieve exceptional difficulties or undue hardship*, provided said relief can be granted without substantial detriment to the public good and does not substantially impair the intent of these Regulations.

1) *No Variance shall be granted unless the Board of Zoning Appeals*

*finds that all of the following conditions exist:*

a) *The special circumstances or conditions applying to the building or land in question are peculiar to such lot or property*, and do not result from the actions of the applicant, and [d]o not apply generally to other land or buildings in the vicinity.

b) The granting of the application is *necessary for the preservation and enjoyment of the substantial property right and not merely to serve as a convenience to the applicant.*

\* \* \*

(Emphasis added.) Clark County Zoning Regulations Chapter 9, Section C.[1]

**{¶ 8}** Coppess contends Middendorf presented no evidence of any "exceptional narrowness, shallowness, shape, topographic conditions, or other extraordinary situation or condition" of his lot. Coppess asserts that Middendorf also presented no evidence that a variance was necessary "to relieve exceptional difficulties or undue hardship" or that any existing "special circumstances or conditions" applying to Middendorf's land were peculiar to his lot. Finally, Coppess claims the record establishes that the proposed pole barn was not "necessary for the preservation and enjoyment" of any substantial property right. Rather, according to Coppess, the pole barn was intended "merely to serve as a convenience" to Middendorf and his sons by providing additional storage and allowing them to work on their cars indoors.

---

[1] The above-referenced zoning regulations were in effect when the BZA granted Middendorf's variance. They are attached to the BZA's appellate brief. The same regulations currently remain in effect, but they were renumbered effective April 20, 2019. This current version is attached to Coppess' appellate brief at Exhibit A.

**{¶ 9}** In response, appellee BZA argues that "[t]he trial court gave deference to the BZA's resolution of evidentiary conflicts and credibility determinations" and did not abuse its discretion in upholding the BZA's decision.[2] (Appellee BZA's brief at 4.) The BZA then argues that the standard applicable to an "area variance" such as the one Middendorf requested is the "practical difficulties" test found in *Duncan v. Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692 (1986). With regard to the additional, specific standards set forth in Clark County's zoning regulations and quoted above, the BZA contends Middendorf presented a preponderance of substantial, reliable, and probative evidence to satisfy those standards.

**{¶ 10}** The BZA first cites Middendorf's testimony that the proposed pole barn would not be used commercially, that it would be attractive and enhance property values, and that it would not cause water drainage issues. To the extent that this testimony contradicted Coppess' testimony, the BZA contends it was entitled to credit what Middendorf said. With regard to the specific criteria found in Clark County's zoning regulations, the BZA argues:

> The preponderance of the evidence also supported findings under Chapter 9 of the Clark County Zoning Regulations. The special conditions— the lot being 0.06 acres short of one acre—were peculiar to Middendorf's property in the neighborhood. The variance preserved substantial property rights, by being large enough to work on the cars and being tall enough to accommodate the proper equipment to raise the cars to work on them. Granting the variance did not effect a change in the zoning maps, but

---

[2] We note that appellee Middendorf has not filed an appellate brief.

allowed a use that Middendorf was 0.06 of an acre short of being able to do without a variance.

Coppess, by his arguments, invites this Court to reweigh the evidence and apply the *Duncan* factors de novo. But this is beyond the purview of the appellate court. *Ward v. Cuyahoga Falls Bd. of Zoning*, 9th Dist. Summit No. 27848, 2016-Ohio-7091, ¶ 13. The trial court's decision is not an abuse of discretion, but instead demonstrated appropriate consideration of the legal issues while at the same time showing the restraint that it required when reviewing administrative decisions under R.C. Chapter 2506.

(Appellee BZA's brief at 7.)

**{¶ 11}** In reply, Coppess insists that "reweighing" the evidence is not required here because there are no findings by the BZA or the trial court addressing the pertinent zoning regulations, and no evidence exists to support any such findings. He argues:

There is no evidence in the record that Mr. Middendorf's lot is exceptionally narrow or shallow. There is no evidence in the record that the shape or topographic conditions of the lot are exceptional. There is no evidence of <u>any</u> special circumstances or condition of Appellee Middendorf's lot that justifies a variance. The only circumstance or condition Appellee has identified is that the size of the lot is not a full acre. The fact that Appellee Middendorf's lot is 0.94 acre is not extraordinary. There is no evidence in the record that could support a finding that this condition is "peculiar" to Mr. Middendorf's property and "does not apply generally to

other land or buildings in the vicinity." Zoning Regulations, Chapter 9, Section C(3)(b)(1)(a).

Moreover, the record makes it clear that the variance is not "necessary for the preservation and enjoyment of the substantial property right" and serves merely "as a convenience to the applicant." (Zoning Regulations, Chapter 9, Section C(3)(b)(1)(b)). Appellee Middendorf requested the variance for his three sons to repair cars on his property, because "sometimes it's raining out, it would be nice to pull the car in there and work out of the rain. (R.4 at p. 16, 13-16). Appellee Middendorf also wants "to improve [his] storage area." (*Id.* at 19). Plainly, the lack of a variance is not preventing Appellee Middendorf and his sons from using the property to repair their cars. Nor is the lack of a variance preventing Appellee Middendorf from using his 0.94-acre property for storage. The convenience of repairing cars out of the rain and having more storage are not necessary for Appellee Middendorf's preservation or enjoyment of his property.

(Appellant's reply brief at 2-3.)

{¶ 12} Before addressing Coppess' argument, we briefly will outline the applicable standard of review. We recently explained the standard governing BZA appeals as follows:

* * * "R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals. R.C. 2506.04

governs the standard of review the trial court must apply in such an appeal. It provides that 'the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.' The statute further provides that the court's judgment may be appealed by any party to the court of appeals 'on questions of law.' " *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 22, quoting R.C. 2506.04.

"The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03 * * *." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). "Thus, R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Cleveland Clinic* at ¶ 24, citing *Dudukovich v. Lorain Metro. Housing Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979).

In contrast, the court of appeals has a standard of review that is "more limited in scope." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). The court of appeals may "review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and

probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Id.* at 34, fn. 4, quoting R.C. 2506.04.

An " 'abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

*Penewit v. Spring Valley Bd. of Zoning Appeals*, 2d Dist. Greene No. 2019-CA-6, 2019-Ohio-3200, ¶ 18-21.

**{¶ 13}** With the foregoing standards in mind, we conclude that the trial court erred in affirming the BZA's decision to approve Middendorf's variance request. In reaching this conclusion, we do not engage in inappropriate "weighing" of the evidence or in making our own credibility determinations. On its face and as a matter of law, the evidence submitted by Middendorf simply does not satisfy the Clark County variance requirements quoted above.

**{¶ 14}** In his testimony before the BZA, Middendorf cited the fact that his lot was .94 acres. He stressed that if it were .06 acres larger he would not need a variance because the restrictions at issue would not apply. He then explained that he wanted a variance because the proposed pole barn would give him additional storage space and would give his sons a place to work on their cars out of the weather.

**{¶ 15}** To obtain a variance, Middendorf first was required to establish some

"exceptional difficulties or undue hardship" caused by the "exceptional narrowness, shallowness, shape, topographic conditions, or other extraordinary situation or condition" of his lot. On appeal, Middendorf again cites his .94 acre lot size as a "special condition" sufficient to satisfy the variance requirements. In our view, however, the precise fact that made Middendorf's lot subject to the challenged zoning requirements (having a lot size less than one acre) simultaneously cannot serve as the sole "extraordinary situation or condition" sufficient to exempt him from those same requirements.

{¶ 16} But even if we accept, arguendo, that Middendorf's lot size constitutes an "extraordinary situation or condition," the BZA cannot grant a variance unless the situation or condition is peculiar to his lot and not generally applicable to other lots in the vicinity. We see no evidence that Middendorf's lot is the only one in the area with a size just under one acre. In addition, the zoning regulations preclude granting a variance where it is "merely to serve as a convenience to the applicant." Middendorf testified that he wanted a pole barn to provide extra storage and to give his sons a place to work on their cars out of the weather. These are textbook examples of providing convenience to an applicant. They do not establish that a variance is necessary for the preservation and enjoyment of an applicant's substantial property rights, which is what the zoning regulations require.

{¶ 17} Finally, Middendorf's citation to the Ohio Supreme Court's 1986 decision in *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692, fails to demonstrate his entitlement to a variance. In *Duncan*, the Ohio Supreme Court applied various factors to determine whether a property owner seeking an area variance had encountered "practical difficulties" in the use of his property. *Id.* at 86-87. But without regard to the practical-difficulties test applied in *Duncan*, we have found Middendorf not entitled to a variance

for other reasons, namely his failure to satisfy the requirements in Clark County's own zoning regulations. In particular, he presented no evidence to establish (1) an extraordinary situation or condition on his lot, (2) that any such situation or condition was peculiar to his lot, or (3) that his requested variance was for more than convenience. Absent any evidence establishing these prerequisites, the trial court acted unreasonably, and thereby abused its discretion, in affirming the BZA's decision to grant Middendorf a variance.

{¶ 18} Coppess' assignment of error is sustained. The judgment of the Clark County Common Pleas Court is reversed, and the variance granted to Middendorf by the Clark County Board of Zoning Appeals is vacated.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

Gregory R. Flax
Andrew P. Pickering
William C. Hicks
Hon. Robert J. O'Neill