[Cite as *State v. Murray*, 2021-Ohio-1335.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-58 |
| | : | |
| v. | : | Trial Court Case No. 2020-TRC-5507 |
| | : | |
| ESTHER N. MURRAY | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of April, 2021.

. . . . . . . . . . .

ERIN J. MCENANEY, Atty. Reg. No. 0076853, Assistant Prosecuting Attorney, Clark County Municipal Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

REGINA ROSEMARY RICHARDS, Atty. Reg. No. 0079457, 202 Scioto Street, Urbana, Ohio 43078
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Esther N. Murray appeals from her conviction on her guilty plea in the Clark County Municipal Court to one count of operating a motor vehicle while under the influence (OVI), in violation of R.C. 4511.19(A)(1)(d), a misdemeanor of the first degree. Specifically, Murray challenges the trial court's denial of her pre-sentence motion to withdraw her guilty plea. After the denial of her motion, the municipal court imposed a fine of $375, plus court costs, and sentenced Murray to three days in jail, to be suspended with the successful completion of a three-day intervention program. The court also suspended Murray's driver's license for one year. The judgment of the trial court is hereby affirmed.

{¶ 2} Murray was cited on July 18, 2020, for two counts of OVI and one count of failing to drive in marked lanes. The citation stated that she had a blood alcohol content of .164, and the "Impaired Driver Report" stated that Sgt. Slanker had administered the horizontal and vertical nystagmus test, the walk and turn test, and the one-leg stand field sobriety tests.

{¶ 3} At her July 24, 2020 arraignment, Murray appeared pro se and pled not guilty. She executed a waiver of her speedy trial time and of her right to an attorney. A transcript of the arraignment is not part of the record.

{¶ 4} The court scheduled a "non-attorney pretrial" for September 1, 2020. At that time, the court discussed with Murray the fact that she had entered and signed a plea agreement with the prosecutor. The agreement was that Murray would plead to one count of OVI in exchange for the dismissal of the other two charges. Murray indicated her understanding of the agreement and her desire to proceed with her plea. The court explained the rights Murray would be waiving by entering a plea, including the right to a

jury trial, to call witnesses, and to be represented by an attorney. The court also explained that the General Assembly had prescribed a minimum punishment for the offense, including a $375 fine, a one-year driver's license suspension, and 72 hours of confinement. The court also explained the maximum possible penalties. Murray indicated her understanding of all of these matters, stated that she did not have any questions for the court, and indicated that she wanted to proceed with the plea. The trial court then found her guilty of one charge of OVI and dismissed the other charges.

{¶ 5} The court ordered Murray to attend "the 72 hour driver's intervention program" and indicated that, when the court received a report from that program, it would order Murray to appear for sentencing. The court explained to Murray that this program included a "talk" with a substance abuse professional to determine if substance abuse treatment was necessary. The court also explained that, if treatment were recommended by the substance abuse professional, that information would be included in the report to the court, and the court would expect Murray to "have already gotten started in it" when she comes back to court for sentencing. The court instructed Murray to "bring paperwork from your treatment provider" when she came back to court. Murray acknowledged her understanding of the court's order. The court referred Murray to the Addiction Resource Center for an intervention program from September 10-13, 2020, and it scheduled her sentencing for September 28, 2020.

{¶ 6} The court engaged in a detailed discussion with Murray about her driver's license suspension, explaining that driving privileges could be granted under certain circumstances and with proper documentation, including proof of insurance. The court provided specific information about how to apply for driving privileges. Murray indicated

that both she and her son had doctor's appointments for chronic illnesses, the schedules of which were unknown to her at that time; the court responded that if she provided the name and address of the doctor, the judge would "fashion an entry" for doctor's appointments "as needed." The court explained that Murray would need to have proof of her driving privileges with her in case she were stopped by law enforcement.

{¶ 7} On September 16, 2020, counsel for Murray entered a notice of appearance, and on the same day the attorney filed a motion to withdraw Murray's plea. The motion also requested that the court vacate the sentencing hearing scheduled for September 28 and, instead, hold a hearing on her motion to withdraw her plea. The motion's central argument was that Murray had not been represented by counsel when she entered her guilty plea and had been "without the benefit of counsel to explain the nature of the charges and possible penalties; specifically, whether or not both charges of OVI merged; or the benefit of accepting the state's offer to dismiss one for one (the other charge was a minor misdemeanor and carried no jail time)," that she would get six points on her license, or that she would "be subject to continuing authority and potential revocation of probation, which would lead to even more jail time beyond the three (3) day driver intervention program." The motion also argued that Murray had not been told she could challenge various matters, including the initial stop of her jeep and "the accuracy, competence, admissibility, relevance, authenticity, or credibility of the standard field sobriety tests and the specific breath-test results." The motion also asserted that Murray's "pre-existing medical conditions * * * were significant factors under the totality of the circumstances."

{¶ 8} With regard to Murray's preexisting conditions, specifically, the motion

argued that Murray had several pre-existing medical conditions which were "relevant to her motion to withdraw her plea because they factor into all stages of the adversarial proceedings, from the initial stop to the plea colloquy." These conditions included "Ehlers-Danlos Syndrome" (EDS), abnormal gait, hiatal hernia, esophageal dysphagia (ED), clinical anxiety, and hypertension. Murray argued that her EDS and abnormal gait were factors under the totality of the circumstances "on the divided attention portion of the field sobriety tests: Walk and Turn, and One Leg Stand." Murray also argued that her hernia and ED were "recognized factors that affect the reliability of breath alcohol content (BAC) in breath tests," in addition to raising concerns about whether the breath test was conducted in compliance with Ohio Department of Health standards. Third, Murray asserted that her clinical anxiety and hypertension "significantly impaired her ability to process all of the court proceedings," including the Crim.R. 11 colloquy in open court on September 1, 2020; Murray asserted that her wristwatch/blood pressure monitor had "saved the HBP [high blood pressure] data" from the morning when she entered her guilty plea, and that the combination of her anxiety and high blood pressure "made her so distraught that she did not voluntarily, knowingly, and intelligently waive all of her rights to enter the guilty plea."

{¶ 9} Finally, Murray argued that the withdrawal of her plea would not prejudice the State because the motion was made prior to sentencing, the case was "hardly two months old," and "the evidence in chief should still be intact and the prosecuting witnesses should still be available." Murray requested a hearing to provide additional evidence about the bases for her motion to withdraw her plea, her pre-existing medical conditions, and the manner in which those conditions related to "her meritorious pretrial defenses." Murray's

attorney also filed a demand for discovery.

{¶ 10} The trial court addressed Murray's motion to withdraw her plea on September 28, 2020, the date originally scheduled for sentencing. The court indicated that it had provided defense counsel with an audio recording of the plea hearing to review. Murray's attorney noted that she had not had time to subpoena Murray's doctors, but that she had faxes from the doctors. Counsel stated that she had listened to the Crim.R. 11 plea colloquy and acknowledged that "the Court did its job and it was a sufficient colloquy," but that Murray "wasn't able to process the data due to her anxiety" and high blood pressure; counsel offered to present Murray's "blood pressure readings" from that day, but indicated she did not "have a doctor here to authenticate that."

{¶ 11} Counsel indicated that she was "convinced [Murray] did not understand the nature of the charges and possible penalties" and stated her belief that Murray "would have a meritorious defense to the charges based on her EDS Ehlers-Danlos Syndrome" and gastric issues "that often alter the results of a breath test." She also stated that the weight to be given to the field sobriety tests would be "diminished * * * by [Murray's] preexisting conditions." Counsel for Murray presented six exhibits.

{¶ 12} The trial court addressed Murray's exhibits when it overruled her motion to withdraw her plea. With respect to Defense Exhibit 1, the court noted that "Dr. Jon[a]s had not seen your client for more than 3 years * * * before either the date of this arrest or the plea and his letter does indicate he has no records of the abnormality."[1] With respect

---

[1] Exhibit 1 is correspondence dated September 25, 2020 from A. Patrick Jonas, M.D. to counsel for Murray It states:

> I was Esther Murray's Family Physician until the end of 2017. I last saw her in June of 2017. I diagnosed her with hypermobile Ehlers-Danlos Syndrome and treated her for Bipolar Depression, hypoglycemia, low back pain, hip joint pain,

to Defense Exhibits 2 through 4, records that dealt with Murray's blood pressure, the court noted they were not dated in any way.[2]  Defense Exhibits 5 and 6 were photographs "of something on a cellphone and the * * * dates on the notations are January of 2019."[3] The court found that these exhibits did not support a finding that Murray's plea was not entered knowingly, voluntarily or intelligently; it overruled the motion to withdraw the plea and stated that it was prepared to go forward with sentencing. The court also noted that Murray had previously waived her right to counsel.

{¶ 13} In its written decision, the trial court determined:

[T]he Court finds that until today, the defendant was not represented by counsel.   She waived that right in her July 24, 2020 written request for a pretrial and again during her September 1, 2020 plea hearing.   A review of the recording of that hearing reveals the defendant was fully advised pursuant to Crim.R. 11.   During that hearing, she not only articulated her understanding of the nature of the charges and possible penalties she faced; she inquired as to how to obtain limited driving privileges.

The Court conducted a full hearing on the defendant's motion which

---

sacroiliac pain, headache, neck pain, Trigenimy, Dysphagia, and various acute infections.
    Although I have no record of a gait abnormality in my records, Ehlers-Danlos Syndrome with hip, lumbar, and sacroiliac involvement can affect gait.  Many EDS patients are clumsy and have some difficulty with the tandem walk test due to a proprioceptor malfunction secondary to their EDS which is a connective tissue disorder.

[2] These three undated pages reflect blood pressure readings from "9:20" to "23:50."   The highest reading is 174/113 at "10:50."

[3] These two pages list various diagnoses on January 18, 2019 and March 12, 2019. Page five reflects that "Abnormal Gait" was "noted" on March 12, 2019.

was filed within a reasonable time, 15 days after her plea. The defendant asserts her medical conditions as reason to withdraw her plea; Ehler-Danlos Syndrome; Abnormal Gait, Hiatal Hernia; Esop[h]ageal Dysphagia, Clinical Anxiety and Hypertension. Upon review of the exhibits, the Court finds nothing in those exhibits to support the conclusory statements contained in defendant's motion. Dr. Jon[a]s last saw the defendant in his office more than 39 months before her guilty plea and his letter specifically states his files do not contain a record of gait abnormality. Defendant's exhibits 2 – 4 are undated and defendant's exhibits 5 and 6 are dated more than 18 months prior to her plea. Finally, there is no evidence as to whether the state would be prejudiced by the withdrawal of the plea.

* * * After carefully balancing all factors, the Court cannot find a reasonable and legitimate basis to permit the defendant to withdraw her plea. Accordingly, the motion is overruled.

{¶ 14} In keeping with its earlier pronouncement, the trial court imposed a suspended three-day sentence, a fine and court costs, and it suspended Murray's driver's license for one year.

{¶ 15} Murray asserts one assignment of error on appeal:

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY APPELLANT'S UNCOUNSELED, PRE-SENTENCE MOTION TO WITHDRAW HER GUILTY PLEA WITHOUT A FULL AND FAIR HEARING WHERE SHE COULD PRESENT EVIDENCE AND TESTIMONY TO SUPPORT HER MOTION.

{¶ 16} Murray asserts that it was unreasonable for the trial court to convert the sentencing hearing to a motion hearing, because its notice of doing so did not allow enough time for Murray's witnesses (former and current physicians) either to respond to her requests for authenticated records or to be issued subpoenas. Murray argues that her pre-existing conditions were relevant to her motion to withdraw her plea, because they "factored into all stages of the adversarial proceedings, from the initial stop to the plea colloquy."

{¶ 17} Murray also asserts that the trial court knew her guilty plea was made without counsel and that the case was set for a "non-attorney pretrial" rather than a plea hearing on September 1, 2020, when she entered her plea. Further, she argues that the record does not reflect that she applied for a public defender, but was "disqualified," which presents "an issue capable of repetition yet evading review – as the required prong cannot be met without a record and uncounseled pleas lead to sentences that are completed before an appeal is decided."

{¶ 18} Murray argues that it was unreasonable for the trial court to overrule her motion without giving her an opportunity to present evidence and witnesses "beyond the 'single factor' of her uncounseled plea." She argues that the trial court was required to indulge every reasonable presumption against her waiver of the right to counsel, "because it is a fundamental, constitutional right." Murray reiterates her argument that it was the responsibility of defense counsel – not the trial court or the prosecuting attorney -- to advise her "of whether or not both charges of OVI merged; or the benefit of accepting the State's offer to dismiss one for one," or that she could challenge the stop and the admissibility of her test results.

{¶ 19} Murray asserts that her "uncounseled state of mind at the time she entered her plea of guilt was compromised by clinical anxiety and hypertension," which significantly impaired her ability to process all of the court proceedings, including the Crim.R. 11 colloquy. She asserts that her anxiety and high blood pressure made her "so distraught that she did not voluntarily, knowingly, and intelligently waive all of her rights to enter the guilty plea," that all she "could focus on was not passing out before the court would grant her driving privileges." and that the State had been in a superior bargaining position because Murray "was not advised that she could apply for driving privileges pending litigation." She also argues that if she had been afforded an opportunity to present evidence about her medical conditions, her claim would have been more credible.

{¶ 20} Murray further reiterates her assertions about her medical conditions:

Murray's medical conditions factored into all stages of the adversarial proceedings, from the initial stop to the plea colloquy. First, pursuant to the [National Highway Traffic Safety Administration], Murray's EDS and gait would be factors from under the totality of circumstances on the divided attention portion of the field sobriety tests: Walk and Turn, One Leg Stand. Second, Murray's hernia and ED are recognized factors that affect the reliability of breath alcohol content (BAC) in breath tests on top of the (previously mentioned) pretrial challenge of whether the breath test was in compliance with [Ohio Department of Health] standards. And, third, Murray's clinical anxiety and hypertension significantly impaired her ability to process all of the court proceedings leading up to and including the Crim.R. 11 colloquy in open court on 1 September 2020.

{¶ 21} Finally, Murray argues that her uncounseled plea was not entered knowingly, intelligently, or voluntarily because she was too distraught from clinical anxiety and high blood pressure to process the proceedings. She notes that the State "did not raise an issue of prejudice for want of evidence or witnesses" in response to her motion or on the day of the hearing.

{¶ 22} The State responds that "whether a full hearing was held on the motion is a factor to be considered by the court, [but] a defendant does not have an absolute right to a hearing on a motion to withdraw a guilty plea," and regardless, the record reflects that Murray was afforded a "full and fair hearing." The State points out that Murray had ten days between the time the court set the hearing and the date the motion was to be heard, and Murray gave no explanation as to why ten days was not enough time to effectuate service. She also did not request a continuance.

{¶ 23} Further, the State points out that, although Murray claims that her state of mind during the change of plea hearing was compromised by clinical anxiety and hypertension, she never established a connection between those conditions and her alleged inability to understand the full colloquy conducted by the trial court pursuant to Crim.R. 11. In fact, while documents were provided and statements were made by counsel, Murray herself never provided any testimony about her medical conditions and how they affected her at the hearing, if at all, and no direct evidence was presented at the hearing to show how or why these conditions would have had an adverse effect of Murray's understanding on the proceedings. The State observes that, although defense counsel alluded at the hearing to connections between Murray's alleged medical issues and the reliability of the field sobriety tests, "simple conjecture by defense counsel is not

evidence," and Murray failed to connect her medical conditions with the need to withdraw her plea. According to the State, the trial court weighed the evidence that was presented and found no reasonable and legitimate basis to allow Murray to withdraw the guilty plea.

**{¶ 24}** As this Court has noted:

Pursuant to Crim.R. 32.1: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). The presentence standard is more lenient than the "manifest injustice" standard, which is applicable to postsentence motions. *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10. Nevertheless, even under the presentence standard, the right to withdraw a plea is not absolute, and a trial court retains discretion to overrule a presentence motion to withdraw a plea. *Xie* at 527 * * *.

Appellate courts review trial court decisions on motions to withdraw pleas for abuse of discretion. *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977), paragraph two of the syllabus. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse

of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

In evaluating whether a trial court has abused its discretion in overruling a presentence motion to withdraw a plea, this court has adopted the following nine factors set forth in *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995), *overruled on other grounds, State v. Sims,* 2017-Ohio-8379, 99 N.E.3d 1056 (1st Dist.):

"(1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea."

*State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 29, quoting *State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 11. (Other citation omitted.)

"In considering these factors, the trial court employs a balancing test; no single factor is dispositive." *Id.* at ¶ 30, citing *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20. However, "[t]he ultimate question for the trial court is whether there is a 'reasonable and legitimate basis for the withdrawal of the plea.' " *Id.*, quoting *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715.

*State v. Rozell*, 2018-Ohio-1722, 111 N.E.3d 861, ¶ 24-27 (2d Dist.).

{¶ 25} "A trial court that denies a pre-sentence motion to withdraw a guilty plea does not abuse its discretion where the only reason given by the defendant is a change of heart." *State v. DeJesus*, 2d Dist. Greene No. 2015-CA-4, 2015-Ohio-4111, ¶ 20, citing *State v. Cohen,* 2d Dist. Montgomery No. 25376, 2013-Ohio-2928, ¶ 15.

{¶ 26} After conducting the balancing test, the trial court determined that Murray lacked a reasonable and legitimate basis to withdraw her guilty plea. We agree. Murray was unrepresented at the time of her guilty plea, having executed a clear waiver of her right to counsel at her arraignment. She further affirmed her intention to proceed pro se at the time of her plea. Murray mentioned her "chronic illnesses" in the course of the plea hearing, but they were not in evidence. The transcript of the plea hearing further reflected that Murray acknowledged her understanding of the charges against her and the possible penalties. While Murray's attorney asserts that her anxiety and high blood pressure impaired her ability to understand the proceedings, such impairment was not reflected in the transcript. After speaking with the prosecutor, Murray articulated her desire to waive her rights and to proceed with her plea in exchange for the dismissal of the additional charges, and she was able to question the court about obtaining additional

driving privileges to transport her son. We conclude that Murray's plea was entered knowingly, intelligently, and voluntarily.

{¶ 27} We further conclude that Murray had a hearing on her motion to withdraw her plea with the full and fair consideration of the court. While counsel represented that she was not able to issue subpoenas in time for the hearing, counsel did not object to the September 28, 2020 proceeding or request that it be continued. The court provided defense counsel with an opportunity to review the audio of Murray's plea and, after doing so, counsel acknowledged that "the court did its job and it was a sufficient colloquy." The court considered the exhibits presented by Murray as evidence of her pre-existing conditions, noting that one of the doctors had not seen Murray in over three years and that the blood pressure exhibits lacked dates. Murray's motion set out specific reasons for the withdrawal of her plea, namely the effect of her multiple pre-existing conditions, but she failed to support the conclusory assertions in her motion regarding the effect of those conditions at the hearing. Murray herself did not testify, and there was no basis to conclude that she had a complete defense to the OVI charge. In other words, the trial court reasonably concluded that Murray did not establish a reasonable and legitimate basis for the withdrawal of her plea.

{¶ 28} Murray's assignment of error is overruled.

{¶ 29} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Erin J. McEnaney
Regina Rosemary Richards
Hon. Denise L. Moody